**UNITED STATES of America,
Plaintiff,**

v.

**ONE 1971 OPEL G. T., ENGINE NO. 77228077, CALIFORNIA LICENSE NO. 194 CQE, its tools and appurtenances, Defendant,**

**Jerry Scoggins, Claimant.**

No. 73–1215.

United States District Court,
C. D. California.

July 10, 1973.

Victor Sherman, of Nasatir, Sherman & Hirsch, Beverly Hills, Cal., for claimant, Jerry Scoggins.

William D. Keller, U.S. Atty. by Larry L. Dier, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff United States.

OPINION DELIVERED ORALLY FROM THE BENCH (EDITED)

IRVING HILL, District Judge.

This is an action filed by the Government under 19 U.S.C. § 1595a and 49 U.S.C. § 781 to forfeit the Defendant motor vehicle. The Claimant is the owner of the car, Mrs. Jerry Scoggins. The forfeiture resulted from the alleged use of the car by her son in connection with the importation of marijuana. The Government apparently does not contest Mrs. Scoggins' claim that she is an innocent party in the marijuana transaction.

Prior to the commencement of the instant action by the Government, Mrs. Scoggins had filed a Petition for Remission or Mitigation of the forfeiture under 19 U.S.C. § 1618, which Petition was denied by the Secretary of the Treasury. The Court has before it this morning her Motion for Summary Judgment, which, if granted, would result in immediate return of the car to her. Counsel for both sides agree that there is no disputed issue of material fact, and that the case is ripe for summary judgment. They also agree upon the accuracy of the chronology of the events set forth below:

On April 16, 1972, the Opel was seized by Customs Agents in Marina del Rey.

On May 17, 1972, the Claimant filed a Petition for Remission or Mitigation of Forfeiture under 19 U.S.C. § 1618.

On June 28, 1972, the Claimant received notice from the Department of the Treasury, Bureau of Customs, that the Petition had been referred to that office for investigation.

On August 11, 1972, Agent Atkins interviewed the Claimant and her son.

On October 30, 1972, Mrs. Scoggins filed Claimant's Bond for Costs of Court in the amount of $250 under § 1608.

On April 9, 1973, counsel for the Claimant was informed—and this is the first indication of a decision of her administrative claim—that the Petition for Remission or Mitigation of Forfeiture had been denied.

And, finally, on May 31, 1973, the Government's Complaint for Forfeiture was filed in the District Court.

Please note that the time that elapsed from the seizure until the court case was filed was thirteen and a half months. The time lapse between the Claimant filing her Petition for Remission and the adjudication of that Petition in the Treasury Department was ten and a half months. The period between the filing of the court costs bond, October 30, 1972, and the institution of the judicial proceeding,

May 31, 1973, was seven months.[1]

The Government claims that delay in this case is, in substantial part, attributable to the Claimant. Why? Because the Claimant had the temerity to file an administrative claim under § 1618 and thus, says the Government, she consented—and that word is the Government's, not mine—to a great deal of delay, namely, she consented to whatever time it would take for the Secretary to adjudicate the administrative claim.

That callous and inaccurate view of the situation is one which the Court cannot accept. Surely, the Claimant is not to be disadvantaged or penalized for

1. There was a stipulation of counsel made after the decision was announced that the period of May 1 to May 31, 1973, cannot be held against the Government. That stipulation does not affect the Court's reasoning or the result.

seeking the cheapest way to assert her rights without the need of a lawyer and for taking what the Claimant apparently believed would be the quickest way to get her property back.

■ The Court grants Claimant's motion on a number of alternative grounds.

■ 1. The Court turns first to statutory construction. The Tenth Circuit is undoubtedly correct in Sarkisian v. United States, 472 F.2d 468 (1973), in saying that the whole statutory scheme must be looked at, and the various sections construed, in harmony with each other and in light of the clear congressional purpose that forfeitures be promptly adjudicated where they are resisted by anyone having an interest in the forfeited property.

This is particularly true, and the need for promptness is underscored, when one considers the kind of property that is usually involved. The property most frequently forfeited in narcotics and border violations (and certainly the kind of property that produces almost all of the litigation in district courts) is automobiles. Everybody knows that automobiles are a wasting asset. Their value diminishes substantially every month, declining as much as 25% a year.

■ A claimant who thinks he has a right to get his forfeited car back finds himself in a real dilemma. He must continue to make payments on the car. The Court judicially notices that a very large percent of all cars are bought on financing. So the claimant must continue to make payments to protect his interest while pursuing his right to question the validity of the forfeiture.

Let us take a precise look at the statutes. The Government argues that even though the Claimant has filed a $250 bond under the provisions of 19 U.S.C. § 1608—which filing makes it mandatory that the U.S. Attorney file a complaint in the district court and obtain a court determination of the propriety of the forfeiture—that if the Claimant also seeks an administrative remission of the forfeiture under § 1618, the U.S. Attorney may wait until the Secretary has decided the administrative claim before commencing the court proceeding. In fact, the practice seems to have grown up that the Secretary doesn't even tell the U.S. Attorney of the filing of the bond until he has adjudicated the administrative claim. Counsel for the Government agrees that that is what happened in this case. Thus, there is no way that the lawsuit can get filed until the administrative claim is decided because the U.S. Attorney doesn't know about his duty to file it until then.

Now, if anything is clear from the statutory scheme, it is that claimants are entitled to prompt proceedings in all stages of the forfeiture machinery. The word "immediately" is used in describing the duties of the seizing officer to report his seizures to the Collector . . . § 1602. And the U.S. Attorney's duty is to "immediately" inquire into the facts and to "forthwith" institute court proceedings . . . § 1604.

The Government in this case seizes upon the omission of any such word of immediacy in § 1603 to justify the Collector in delaying a report to the U.S. Attorney, delaying it until the administrative proceeding is all over, and thus delaying the time in which court proceedings are even initiated.

■ The Court construes this group of statutes to require the Collector to report the seizure and the posting of the bond (which is the telltale step indicating that a court proceeding will likely ensue) with great promptness, even though an administrative claim is on file and is being investigated and considered. There is nothing whatever to preclude a continued processing of the administrative claim in the Treasury Department after the Government's petition is filed in the district court.

■ If this construction of the statutes for any reason is not tenable and

incorrect, the Court construes the statute to mean that the administrative proceeding must be rapidly processed in all aspects to give effect to the intent of Congress—particularly when the bond is filed with the Collector. The Secretary must proceed to finish up the administrative adjudication without any substantial delay so that the claimant will have his day in court with the kind of promptness that Congress intended. The time taken by the Secretary in this case does not meet the statutory requirement.[2]

■ 2. The Court finds a violation of due process in the manner in which these statutes have been applied under the facts of this case. The application of due process concepts to Government forfeitures of this kind seems not only correct but required.[3] We must not lose sight of the fact that this is a seizure of property, a very drastic, direct, and immediate remedy. Such a seizure is justified on apparently ancient doctrines that the sovereign may seize the instrumentality of a crime in addition to punishing its perpetrator. The instrumentality of a crime is something quite different from what we call contraband, such as goods smuggled across a border, or narcotics. Yet, the instrumentality of a crime is treated the same in terms of the sovereign's right to employ summary seizure proceedings.

■ The statutes that we are dealing with (19 U.S.C. § 1602 et seq.; particularly § 1618, and 49 U.S.C. § 782), and the cases under them, recognize that the owner of such an instrumentality may be entitled to have the seizure set aside and to have an order for return of the property because he is innocent of any wrongdoing or for other equitable considerations. Surely due process requires a prompt day in Court for an owner making such a claim.

■ If the claimant is so delayed in the exercise of the remedies afforded him that the property becomes substantially worthless before there can be a judicial determination, or is very greatly diminished in value even though it retains some worth, new dimensions are put on the summary seizure procedure, making the matter one of constitutional significance.

I hold as an alternative ground that, assuming the statutes involved were properly construed in this case, their application violates due process.

■ 3. The third alternative ground is laches. Although the application of equitable defenses to actions against the Government is a relatively new phenomenon, our own Circuit has pointed up the very strong possibility that such defenses can and should be applied against the Government in cases of this type. I refer to the case of INS v. Hibi, 475 F.2d 7 (9th Cir., 1973). In that case, the doctrine of estoppel, which is close kin to laches among equitable defenses, is held to be applicable and assertable against the Government.

The Motion for Summary Judgment is granted. The property is ordered returned. By agreement of counsel, a transcript of the Court's remarks from the Bench shall be filed and constitute the Court's Findings of Fact and Conclusions of Law.

2. These alternative statutory constructions may be necessary to avoid what may be the unconstitutionality of the statute *on its face* under the Due Process Clause. Counsel did not argue that the statutes are unconstitutional on their face. And the Court declines to make a holding in that respect.

3. As I read *Sarkisian, supra,* the Tenth Circuit finds that, as applied in that case, the forfeiture statutes violate due process. Although that concept seems to me to be sound, the principal case relied on by the Tenth Circuit (United States v. 37 Photographs, 402 U.S. 363, 91 S.Ct. 1400, 28 L.Ed.2d 822 (1971)), would appear to be clearly distinguishable because it involved First Amendment materials and an apparent prior restraint.