Robert **BOSTON**, Plaintiff,

v.

Stanley **STEPHENS** et al.,
Defendants.

No. 75–237.

United States District Court,
S. D. Ohio, E. D.

May 5, 1975.

Motion for Modification of Order
June 9, 1975.

────────◆────────

Steven E. Hillman, Columbus, Ohio, for plaintiff.

William W. Milligan, U. S. Atty., W. Robinson Watters, Asst. U. S. Atty., Columbus, Ohio, Carmen J. Iodice, Regional Counsel, U. S. Customs, Chicago, Ill., for defendants.

*MEMORANDUM AND ORDER*

DUNCAN, District Judge.

This matter is before the Court upon plaintiff's motion for a preliminary injunction. A hearing having been held concerning the application for preliminary relief, this memorandum constitutes the Court's findings of fact and conclusions of law, pursuant to Fed.R. Civ.P. 52(a).

Plaintiff is the owner of five (5) automobiles which were seized by United States customs officials on the ground that false statements were made to customs authorities in order to effect entry of the cars into the United States. Three of the vehicles were seized at Toledo, Ohio, on October 25, 1974. The other two vehicles were seized at Columbus, Ohio, on October 30, 1974, and November 4, 1974, respectively. The cars were seized pursuant to 19 U.S.C. § 1952 *et seq.* The fair market value of the vehicles exceeds $10,000.

Plaintiff alleges in his complaint that the defendant federal officials have held his property without affording him due process of law. He prays that this Court order defendants to return his vehicles to him. The Court has jurisdiction pursuant to 28 U.S.C. § 1331(a); see *States Marine Lines, Inc. v. Shultz,* 498 F.2d 1146, 1156 (4th Cir. 1974).

This case presents two basic questions for resolution by the Court. First, have the defendant customs officials afforded plaintiff his basic Fifth Amendment right not to be deprived of his property without due process of law? Second, has plaintiff met the prerequisites which entitle a litigant to preliminary injunctive relief?

Congress has provided a statutory scheme which government officials must follow to effectuate lawfully the forfeiture of goods which persons attempt to introduce into the United States via false declarations to customs officials. Whether the plaintiff in fact made false statements to such officials regarding these automobiles is not a question in this case. The statutory scheme contemplates that such a question be determined in forfeiture proceedings instituted by a United States Attorney, see 19 U.S.C. § 1604; this is not such a proceeding. The threshold question, rather, is whether the federal officials involved in the seizures which this case concerns have adhered to the mandate of the statutory forfeiture scheme, as it has been construed by courts in light of the due process clause of the Fifth Amendment.

19 U.S.C. § 1603 provides as follows:

Whenever a seizure of merchandise for violation of the customs laws is made, or a violation of the customs laws is discovered, and legal proceedings by the United States Attorney in connection with such seizure or discovery are required, it shall be the duty of the appropriate customs officer to report such seizure or violation to the United States Attorney for the district in which such violation has occurred, or in which such seizure was made, and to include in such report a statement of all the facts and circumstances of the case within his knowledge, with the names of the witnesses and a citation to the statute or statutes believed to have been violated, and on which reliance may be had for forfeiture or conviction.

Although this section makes no specific mention of a time period within which the appropriate customs officer must act, it has been construed, in light of *United States* v. *Thirty-seven Photographs,* 402 U.S. 363, 91 S.Ct. 1400, 28

L.Ed.2d 822 (1971), as requiring prompt action by these officials. Thus, in *States Marine, supra,* 498 F.2d at 1155, the court stated:

"We do believe that 19 U.S.C. § 1603 must be construed so as to require 'immediate' reporting of the seizure to the United States Attorney for the institutions of forfeiture proceeding under § 1604. Of course, whether or not the requirement of 'immediate' action is satisfied in any given case will depend upon factors such as the length of time necessary for an investigation by customs officers and whether delay in the proceedings is caused by the claimant."

See also *Sarkisian* v. *United States,* 472 F.2d 468, 472 (10th Cir.), *cert. den.* 414 U.S. 976, 94 S.Ct. 291, 38 L.Ed.2d 219 (1973) ("19 U.S.C. § 1603 must also contain time limitations comparable to the section preceding it and the one following, and we construe the section to so provide"); *United States* v. *A Quantity of Gold Jewelry,* 379 F.Supp. 283, 287 (C.D.Cal.1974); *United States* v. *One 1971 Opel G.T.,* 360 F.Supp. 638, 642 (C.D.Cal.1973).

■■ I find from the evidence that customs officials seized the five motor vehicles involved herein in the belief that they were violative of Environmental Protection Agency exhaust standards and in the belief that plaintiff had falsely represented at the time of entry that the vehicles did in fact comply with EPA standards. I further find that although over six months have come and gone since the seizures, the customs officials have yet to complete their report on the matter and refer it to a United States Attorney. I find that this delay was not caused by any delaying tactics on the part of plaintiff or his counsel. I further find that a delay for investigatory purposes of over six months was wholly unjustified when the inquiry before the customs officers was simply whether the automobiles which the officers had in their possession met the representations which plaintiff made when they entered this country.

I further find that plaintiff is a young man whose personal financial solvency, and that of his business, is largely dependent upon the recovery of the five seized vehicles. He faces imminent irreparable harm should preliminary relief not issue. I find that the government has absolutely no cognizable legal interest in retaining possession of these vehicles when it has failed to institute timely forfeiture proceedings against them and has no hope, in view of the delay which has occurred to date, of instituting successful proceedings in the future.

The Court makes no determination whether these vehicles meet Environmental Protection Agency standards, or whether plaintiff made false statements to customs officials. The conclusion which I do reach is that delay by customs officials in referring this matter to a United States Attorney renders the remedy of forfeiture a constitutionally impermissible one in this case. Since forfeiture is no longer available, the vehicles must be returned to Mr. Boston.

Now, therefore, it is ordered that the five vehicles which are the subject matter of this lawsuit, being a 1967 Maserati Mistral number A11134, a 1974 Ferrari Dino, number 07538, a 1967 Dino Fiat Spyder, number 0000364, a 1968 Fiat, Dino, Coupe, number 135AC0003144, and a 1968 Bizzarrini GT 5300 Coupe, be returned to plaintiff Robert Boston forthwith.

## ON MOTION FOR MODIFICATION OF PRELIMINARY INJUNCTIVE ORDER

On May 5, 1975, the Court ordered that five motor vehicles belonging to plaintiff and in the possession of the defendant United States customs officials be returned to him forthwith. On May 6, 1975, the Court conditioned its order upon plaintiff's posting a surety bond in the amount of $500.00. See Fed.R.Civ.

P. 65(c). This matter is again before the Court upon defendants' motion for reconsideration and for modification of the prior orders issued herein.

■ Defendants note that plaintiff filed petitions for administrative relief pursuant to 19 U.S.C. § 1618 and 19 C. F.R. § 171 *et seq.,* and they assert that this fact should alter the decision heretofore reached by the Court in this case. 19 U.S.C. § 1618, as amended, provides as follows:

Whenever any person interested in any vessel, vehicle, merchandise, or baggage seized under the provisions of this chapter, or who has incurred, or is alleged to have incurred, any fine or penalty thereunder, files with the Secretary of the Treasury if under the customs laws or under the navigation laws, before the sale of such vessel, vehicle, merchandise, or baggage a petition for the remission or mitigation of such fine, penalty, or forfeiture, the Secretary of the Treasury, if he finds that such fine, penalty, or forfeiture was incurred without willful negligence or without any intention on the part of the petitioner to defraud the revenue or to violate the law, or finds the existence of such mitigating circumstances as to justify the remission or mitigation of such fine, penalty, or forfeiture, may remit or mitigate the same upon such terms and conditions as he deems reasonable and just, or order discontinuance of any prosecution relating thereto. In order to enable him to ascertain the facts, the Secretary of the Treasury may issue a commission to any customs officer to take testimony upon such petition: *Provided,* That nothing in this section shall be construed to deprive any person of an award of compensation made before the filing of such petition.

Defendants assert that "19 C.F.R. 162.32 provides in essence, that Customs *must wait* sixty days from the date of mailing of the notice of violation before refer-

ring the case to the U. S. Attorney for appropriate action . . . ."

This section of the regulations provides no such thing. 19 C.F.R. § 162.-32(a) (1974) provides, in pertinent part,

If the person liable for a fine or penalty for any violation of the Customs . . . laws fails to petition for relief in accordance with [19 U.S. C. § 1618 and 19 C.F.R. § 171.1 *et seq.*], or pay or arrange to pay the penalty within 60 days from the date of mailing of the notice of violation as provided in section 162.31, the case shall be referred immediately to the U. S. attorney for appropriate action unless other action is expressly authorized by the Commissioner of Customs.

19 C.F.R. § 171.12(b) requires that petitions for administrative relief pursuant to 19 U.S.C. § 1618 be filed within sixty days of the mailing of notice of fine, penalty, or forfeiture. 19 C.F.R. § 171.-1(a) impliedly recognizes, however, that an appropriate case may be referred to the United States attorney before sixty days have elapsed since notice was mailed. The section provides that "[n]o action shall be taken on any petition if the civil liability has been referred to the U. S. attorney for institution of legal proceedings. The petition shall be forwarded to the U. S. attorney." A reading of 19 C.F.R. § 162.32(a) in light of § 171.1(a) reveals that § 162.32(a) governs customs action when no petition for administrative relief is filed; it does not control the situation in which a petition is filed.

■ Even if defendants' reading of 19 C.F.R. § 162.32(a) is correct, the regulation, like the statute, must be read in light of the strictures of the Due Process Clause of the Fifth Amendment. Customs officials cannot rely upon an administrative petition for relief as a device for nullifying the person's due process right to a speedy and fair forfeiture adjudication. "[T]he fact that the claimant may have pursued certain

administrative remedies does not serve to justify a governmental delay in the institution of a forfeiture action." *United States* v. *A Quantity of Gold Jewelry*, 379 F.Supp. 283, 287 (C.D.Cal.1974). Judge Hill observes in *United States* v. *One 1971 Opel G.T.*, 360 F.Supp. 638, 640–41 (C.D.Cal.1973):

> The Government claims that delay in this case is, in substantial part, attributable to the Claimant. Why? Because the Claimant had the temerity to file an administrative claim under § 1618 and thus, says the Government, she consented—and that word is the Government's, not mine—to a great deal of the delay, namely, she consented to whatever time it would take for the Secretary to adjudicate the administrative claim.

> That callous and inaccurate view of the situation is one which the Court cannot accept. Surely, the Claimant is not to be disadvantaged or penalized for seeking the cheapest way to assert her rights without the need of a lawyer and for taking what the Claimant apparently believed would be the quickest way to get her property back.

The Court found in its May 5, 1975, opinion that "a delay for investigatory purposes of over six months was wholly unjustified when the inquiry before the customs officers was simply whether the automobiles which the officers had in their possession met the representations which plaintiff made when they entered this country." Nothing submitted since the filing of that opinion and order convinces the Court that some other inquiry was the one properly before the defendants. Although defendants assert that "[p]ossible use of the seized vehicles in a criminal prosecution becomes additional justification for their detention or assurance of their availability," the government failed completely to establish even a prima facie case of criminal violation at the hearing on the motion for preliminary injunction. Further, the government acknowledges that the cars were in fact seized pursuant to 19 U.S. C. § 1581(f); this being so, the requirement that prompt forfeiture proceedings be instituted pursuant to 19 U.S.C. §§ 1602–1604 existed. See *States Marine Lines, Inc.* v. *Shultz*, 498 F.2d 1146, 1155 (4th Cir. 1974); *Sarkisian* v. *United States*, 472 F.2d 468, 472 (10th Cir. 1973).

Defendants also complain that the Court's order "effectively put these cars into the commerce of the United States without their ever clearing Customs." The Court's order, it is said, "caused an illegal 'entry' of goods, and a duty free ride for Mr. Boston." The short answer to these and other arguments raised by the defendants is that this case is still active on the docket of this Court. Only the remedy of forfeiture is foreclosed by the Court's preliminary injunctive order. The order does not foreclose any liability which the plaintiff may have in the nature of customs duties or fines.

The government also complains that there are now five motor vehicles in the United States which may not meet EPA exhaust standards. It is true that had the defendants acted diligently and with due regard for plaintiff's constitutional right not to be deprived by federal officers of his property without due process of law, these vehicles might not now be in the commerce of the United States. These defendants did not so act, however, and they would do well to lay the responsibility for the results which have to date occurred in this lawsuit at their own doorstep.

The motion for reconsideration is denied. The government will answer or otherwise plead to the complaint within rule.