DEPARTMENT OF NATURAL RESOURCES v PARISH

1. ADMINISTRATIVE LAW—STATUTES—GAME LAW VIOLATIONS—CON-
   DEMNATION—CIRCUIT COURTS—SEIZURES—FISHING EQUIPMENT.
   The Department of Natural Resources is required to commence
   condemnation proceedings following a seizure of defendants'
   boats, fishing equipment and fish where the value of the prop-
   erty seized is greater than $300 (MCLA 300.14; MSA 13.1224).

2. CONSTITUTIONAL LAW—CONSTITUTIONAL RIGHTS—DUE PROCESS—
   CONDEMNATION—GAME LAW VIOLATIONS—TIMELINESS OF AC-
   TIONS—STATUTES.
   The Department of Natural Resources is required to commence
   condemnation proceedings promptly against property seized for
   game law violations to preserve defendants' constitutional
   rights of due process (US Const, Am XIV; Const 1963, art 1,
   § 17; MCLA 300.14; MSA 13.1224).

3. APPEAL AND ERROR—CONDEMNATION—GAME LAW VIOLATIONS—
   TIMELINESS OF ACTIONS—REVIEW—DELAY—REASONS FOR DELAY.
   A hearing before a trial court is necessary where the record on
   appeal does not disclose the circumstances underlying the delay
   in commencing condemnation proceedings against property
   seized for game law violations and the delay is not so short as
   to be reasonable per se but not so long as to require accelerated
   judgment without a thorough examination of the reasons for
   the delay.

4. APPEAL AND ERROR—CONDEMNATION—GAME LAW VIOLATIONS—
   TIMELINESS OF ACTIONS—REVIEW—DELAY—REASONS FOR DELAY.
   The factors which must be considered by a trial court in deciding
   what constitutes an unreasonable delay in commencing con-
   demnation proceedings against property seized for game law
   violations include, but are not limited to, the lapse of time
   between seizure of property and filing the complaint, the rea-
   son for the delay, the resulting prejudice to the defendants, and
   the nature of the property seized.

REFERENCES FOR POINTS IN HEADNOTES
[1] 35 Am Jur 2d, Fish and Game § 54.
[2–6] 35 Am Jur 2d, Fish and Game § 52 *et seq.*

5. CONSTITUTIONAL LAW—DUE PROCESS—CONTRABAND—GAME LAW
    VIOLATIONS—PROPERTY INTEREST.

A defendant acquires no property interest in contraband game
sufficient to support a constitutional right under the 14th
Amendment (US Const, Am XIV).

6. CONSTITUTIONAL LAW—DUE PROCESS—CONDEMNATION—GAME LAW
    VIOLATIONS—PROCEEDINGS IN REM.

A defendant's right to a speedy determination of a condemnation
against property seized for game law violations is founded in
the 14th Amendment not the 6th and in a condemnation
proceeding the defendant is afforded many of the rights he is
entitled to in a criminal action; the action remains, however, a
civil proceeding in rem, to which the 6th Amendment is inap-
plicable (US Const, Am VI and XIV).

Appeal from Emmet, Martin B. Breighner, J.
Submitted May 4, 1976, at Grand Rapids. (Docket
No. 25517.) Decided October 20, 1976.

Complaint by the Department of Natural Re-
sources against Donald Parish and others for con-
demnation of boats, nets and fish which had been
seized by the department. Accelerated judgment
for defendants. Plaintiff appeals. Remanded with
instructions.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, and *Randall Whit-
worth, Jerome Maslowski* and *Stewart Freeman,*
Assistants Attorney General, for plaintiff.

*Kathryn L. Tierney,* for defendants.

Before: BASHARA, P. J., and ALLEN and C. J.
HOEHN,* JJ.

C. J. HOEHN, J. Plaintiff, Department of Natural
Resources (hereinafter DNR), appeals as of right

---

* Circuit judge, sitting on the Court of Appeals by assignment.

from an order of accelerated judgment entered on behalf of the defendants.

On November 10, 1974, agents of the plaintiff seized two boats, a quantity of gill nets and some 3,000 lbs. of lake trout from the defendants. On May 6, 1975 the plaintiff initiated proceedings to condemn the property seized under the authority of MCLA 300.14; MSA 13.1224. The defendants responded by filing a motion for accelerated judgment stating the following grounds:

"1. That the claim is barred by Article VI *[sic]* of the United States Constitution.

"2. That plaintiff has failed to state a claim upon which relief can be granted.

"3. That there is no genuine issue of material fact, and that defendants are entitled to judgment as a matter of law.

"4. That plaintiff's use of the judicial process in this case constitutes a deprivation of due process to defendants."

The trial court granted the motion on the fourth ground without having addressed the remaining grounds. We restrict our review to this issue.

The Attorney General has presented the following issues for decision:

I. Is the Department of Natural Resources required to commence condemnation proceedings after seizing hunting and fishing equipment and game?

II. Is the Department of Natural Resources required to commence condemnation proceedings to confiscate fish allegedly taken unlawfully since fish are animals ferae naturae belonging to the state, and individuals may only obtain such rights in their possession as permitted by law, and could the trial court require the DNR to release to the

defendants proceeds from the sale of the fish without first determining the legality of the catch?

III. Does the statute providing for condemnation proceedings following the seizure of equipment and game by the Department of Natural Resources require that the petition be filed immediately after the seizure and is a six-month delay from the seizure of the property to the initiation of the condemnation proceedings a violation of due process?

The answer to the question posed in the first issue, must condemnation proceedings be commenced (1) as to boats and equipment, and (2) as to fish, is in the affirmative.

"If the property seized shall be of greater value than 300 dollars, the officer seizing the same shall file a verified complaint in the circuit court for the county having jurisdiction of the offense, setting forth the kind of property seized, the time and place of seizure and reasons for such seizure, with a prayer for its condemnation and confiscation. * * * Upon the hearing of said petition, if the court shall determine that any of the property mentioned in this petition was *caught, killed, possessed, shipped or used contrary to law,* * * * an order shall be made condemning and confiscating said property and directing its sale or other disposal by the director of conservation * * * ." MCLA 300.14; MSA 13.1224 (Emphasis ours.)

The words *"caught"* and *"killed"* can have reference only to animals ferae naturae. They can apply to nothing else. By the use of these words, the Legislature demonstrated a clear legislative intent that animals ferae naturae must be condemned.

The absurdity of the state requiring its agents to condemn its own property clearly illustrates the

purpose of the Legislature in providing a forum to try the legality of the catch.

We now address ourselves to the question of whether the trial court must determine the legality of the catch and whether a six-month delay in the condemnation proceedings constitutes a violation of due process.

The statute under which this action is brought does not require the complainant to move against the property seized within any particular period of time. The defendants, however, contend that plaintiff is required to commence the condemnation action without undue delay under the authority of the due process clauses of the 14th Amendment to the United States Constitution or Article 1, § 17 of the Michigan Constitution. No Michigan case authority speaks to this precise issue. We therefore look to other jurisdictions, particularly the Federal system, which handles a great number of such cases, for guidance.

It is clear that the 5th Amendment due process protection applies to condemnation suits prosecuted by the Federal government. *United States v US Coin & Currency,* 401 US 715; 91 S Ct 1041; 28 L Ed 2d 434 (1971). *Sarkisian v United States,* 472 F2d 468 (CA 10, 1973), *cert den* 414 US 976; 94 S Ct 291; 38 L Ed 2d 219. We think that for the same reasons, the due process clauses of the 14th Amendment and Const 1963, art 1, § 17 apply here.

Federal statutes contain a provision in 19 USC 1610 which is not dissimilar to the statute in question here, in that it too authorizes the government to commence condemnation proceedings but specifies no time constraints. Section 1610 was scrutinized in *United States v A Quantity of Gold Jewelry,* 379 F Supp 283 (CD Cal, 1974):

"Hence, in light of the considerations of the *Sarkisian, supra,* and *One 1971 Opel, supra* [360 F Supp 638 (CD Cal, 1973)], courts, it is manifestly clear that, in order for the confiscation procedure under the Tariff Act of 1930, § 610, 19 U.S.C. § 1610, employed in the case at bar, to pass constitutional muster, the aggrieved claimant must be afforded a prompt hearing on the alleged violations of the Customs laws. *See also, Truth Seeker Co., supra.* [147 F2d 54 (1945)]. All these courts have indicated that this 'speedy' hearing provision is to be 'read into' the Act itself, thereby making the Act at least facially constitutional. However, any undue delay in the commencement of a forfeiture hearing has been held to be a violation of Fifth Amendment due process, necessitating the return of the confiscated property by the government. *Sarkisian, supra,* 472 F2d at 472; *One 1971 Opel, supra,* 360 F Supp at 642; *Truth Seeker Co., supra,* 147 F2d at 56."

In order to sustain the constitutionality of MCLA 300.14; MSA 13.1224, and preserve the defendants' constitutional rights, we must impose upon the DNR the requirement that condemnation be promptly commenced.

From an examination of the cases which have addressed the issue of what constitutes an unreasonable delay, we discern some of the factors which must be considered by the trial court in ruling on the defendants' motions. Those factors include, but are not limited to: The lapse of time between seizure and filing of the complaint, the reason for the delay, the resulting prejudice to the defendant and the nature of the property seized.

In the instant case the delay in prosecution was approximately six months. In *United States v One 1971 Volvo 2-Door Sedan,* 393 F Supp 843, 846–847 (CD Cal, 1975), a delay of two months was held not to have been unreasonable. On the other hand, delays of nine months, 22 months, six months and 10-1/2 months were, under the circumstances of

those cases, held to be unreasonable in *Sarkisian v United States, supra, United States v A Quantity of Gold Jewelry, supra, Boston v Stephens,* 395 F Supp 1000 (SD Ohio, 1975), and *United States v One 1971 Opel G T,* 360 F Supp 638 (CD Cal, 1973), respectively.

We think that the delay in this case is not so short as to be reasonable per se but not so long as to require accelerated judgment without a thorough examination of the remaining factors.

The second factor to be considered is the reason for the delay. Here we borrow from *Barker v Wingo,* 407 US 514; 92 S Ct 2182; 33 L Ed 2d 101 (1972):

"Closely related to length of delay is the reason the government assigns to justify the delay. Here, too, different weights should be assigned to different reasons. A deliberate attempt to delay the trial in order to hamper the defense should be weighed heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighed less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay." 407 US at 531.

The record before us does not disclose the circumstances underlying the delay. This issue should be considered in a hearing before the trial court on remand. See also *Boston v Stephens, supra,* at 1003.

The third factor is the resulting prejudice to the defendants from the delay. Both the *Boston* and *One 1971 Opel G T* cases, *supra,* involve seizure of automobiles. The courts in those cases made the following observations which they felt to be pertinent to their inquiries:

"I further find that plaintiff is a young man whose personal financial solvency, and that of his business, is largely dependent upon the recovery of the five seized vehicles. He faces imminent irreparable harm should preliminary relief not issue. I find that the government has absolutely no cognizable legal interest in retaining possession of these vehicles when it has failed to institute timely forfeiture proceedings against them and has no hope, in view of the delay which has occurred to date, of instituting successful proceedings in the future." *Boston v Stephens, supra,* at 1003.

"[T]he need for promptness is underscored, when one considers the kind of property that is usually involved. The property most frequently forfeited in narcotics and border violations (and certainly the kind of property that produces almost all of the litigation in district courts) is automobiles. Everybody knows that automobiles are a wasting asset. Their value diminishes substantially every month, declining as much as 25% a year.

"A claimant who thinks he has a right to get his forfeited car back finds himself in a real dilemma. He must continue to make payments on the car. The Court judicially notices that a very large percent of all cars are bought on financing. So the claimant must continue to make payments to protect his interest while pursuing his right to question the validity of the forfeiture." *United States v One 1971 Opel G T, supra* at 641.

It may well be shown that the boat and nets are the means of the defendants' livelihoods or the defendants are continuing to pay for the same. If so, these facts should weigh in their favor. On the other hand the plaintiff has established that its agents were ordered to maintain custody of the items seized by the county prosecuting attorney as evidence in a pending criminal prosecution. On remand, this too should be considered, as well as the reasonableness and binding effect on the plaintiff of the prosecutor's order. Such an order cannot be employed as a ruse. We think the plaintiff

should be required to show the extent to which physical presence of these goods, as opposed to photographs or testimony, will improve the quality of the prosecutor's case. The record also indicates that the bulk of the fish was sold after seizure and that cash is being held in lieu thereof. This cash is of no evidential value.

The fourth factor to be considered is the nature of the property seized:

> "We must not lose sight of the fact that this is a seizure of property, a very drastic, direct, and immediate remedy. Such a seizure is justified on apparently ancient doctrines that the sovereign may seize the instrumentality of a crime in addition to punishing its perpetrator. The instrumentality of a crime is something quite different from what we call contraband, such as goods smuggled across a border, or narcotics. Yet, the instrumentality of a crime is treated the same in terms of the sovereign's right to employ summary seizure proceedings." *United States v One 1971 Opel G T,* 360 F Supp at 642.

Not only may the nature of the property bear directly upon the resulting prejudice to the defendants, it may also reflect the importance of the government's interest in the property. If property is seized as the instrumentality of a crime, the property may itself be inherently harmless, such as an automobile or boat. If so, the government's interest in seizure is primarily to punish the property owner for allowing his goods to be so employed. Alternatively, the property may be contraband, that is, illegal to possess, such as certain types of weapons or drugs. In such a case, the government's interest is to protect society from the harmful effects of the goods. This we feel is the superior motive and justifies greater indulgence of delay on the part of the government. The property

seized in the instant case, boats and nets, clearly is within the former category and this should weigh in the defendants' favor in the trial court's consideration.

The appropriateness of considering the fishing gear and boats belonging to the defendants in the same light as the fish presumptively belonging to the state must be questioned. If title to the fish is in the State of Michigan, and the fish are contraband in the hands of the defendants, it is difficult to see how prejudice could result to the defendants by the six-month delay. If title is in the defendants, then the court should proceed to determine whether or not the six-month delay was prejudical or whether the defendants could be made whole by the eventual payment of the money together with the statutory interest from the time that they had been deprived of their catch. This, of course, requires a determination by the court of whether the state or the defendant had rightful title to the fish at the time of the seizure.

The above enumerated factors are not intended to be exhaustive, but merely to operate as guidelines for determination by the trial court. The reader may have noted the similarity between these and the factors to be weighed in assessing a criminal defendant's denial of speedy trial claim. *Barker v Wingo, supra.* While similarity exists we feel constrained to emphasize the distinctions as well. A defendant's right to speedy determination of a condemnation is founded in the 14th Amendment not the 6th. In a condemnation proceeding the defendant is afforded many rights he is entitled to in a criminal prosecution. The action remains, however, a civil proceeding in rem, to which the 6th Amendment is inapplicable. *Calero-Toledo v Pearson Yacht Leasing Co,* 416 US 663;

94 S Ct 2080; 40 L Ed 2d 452 (1974). *United States v US Coin & Currency, supra.*

This matter is remanded to the trial court for a hearing on the defendants' motions consistent with this opinion.

No costs, a public question being involved.