UNITED STATES of America, Plaintiff,

v.

ONE (1) DOUGLAS A–26B AIRCRAFT, SERIAL NO. 28034, FAA REGISTRATION NO. N3035 S, AND EQUIPMENT, Defendant,

Rebel Aviation, Inc., Claimant.

No. CV477–19.

United States District Court,
S. D. Georgia,
Savannah Division.

Sept. 6, 1977.

Kenneth C. Etheridge, Asst. U. S. Atty., Savannah, Ga., for plaintiff.

John L. Taylor, Jr., Ralph H. Greil, Troutman, Sanders, Lockerman & Ashmore, Atlanta, Ga., Lamar W. Davis, Jr., Miller, Beckmann & Simpson, Savannah, Ga., for claimant, Rebel Aviation, Inc.

## ORDER ON MOTION OF REBEL AVIATION, INC. FOR SUMMARY JUDGMENT

### I

LAWRENCE, District Judge.

This forfeiture proceeding grows out of the seizure by Customs on February 29, 1976, of the defendant aircraft for suspected use in the importation of marijuana. The claimant, Rebel Aviation, Inc., is a Georgia corporation. As owner of the aircraft it objected to the forfeiture of the aircraft and moves for summary judgment. Argument was heard on August 19, 1977. Copious briefs have been filed.

Two issues predominate: (1) whether Rebel Aviation has standing in the litigation and (2) whether the delay by the Government in instituting forfeiture proceedings constitutes a failure to comply with the statutory obligations of Customs in respect to promptness (19 U.S.C. §§ 1602–1604) and a denial of due process by depriving the owner of the enjoyment of his property for an unreasonable length of time.

In resolving each of these issues the time element plays an imperious role.

The aircraft was purchased by or on behalf of Rebel Aviation, Inc. on February 12, 1976. Customs seized the plane at the Crisp County Airport on February 29, 1976, for violation of the customs laws. On the following day, the aircraft was reported by Rebel Aviation as having been stolen from the Fulton County Airport. The first formal notice of the seizure was sent by Customs on March 31, 1976. Rebel Aviation filed a petition for remission or mitigation of forfeiture on April 23, 1976 and Customs acknowledged its receipt on April 28th. At the same time a penalty of $75 ($25 per ounce of marijuana found on the aircraft) was imposed. In support of the petition for remission, Rebel Aviation filed a supplemental memorandum on May 28, 1976. Customs responded on July 23, 1976, by increasing the penalty to $1,500—$500 each for failure to manifest cargo; to give notice to Customs of arrival, and to make entry of the aircraft with cargo.

On October 22, 1976, nearly eight months after the seizure, Rebel Aviation, Inc. filed an action in this Court against the District Director of Customs seeking the return of the aircraft or, in the alternative, requiring defendant to notify the United States Attorney to institute forfeiture proceedings. See *Rebel Aviation, Inc. v. Marion F. Baker, District Director of the U. S. Customs Service*, No. CV476–282. The investigation by Customs was completed on November 15, 1976. A month later the case was referred to the United States Attorney. This was 9½ months after the seizure. Forfeiture proceedings were instituted by the United States on January 19, 1977.

On February 14, 1977, the petitions for remission were denied by the Secretary.

### II

The Government has presented a "Memorandum of Points and Authorities in Opposition to Rebel Aviation, Inc.'s Motion for Summary Judgment." Attached to it is an affidavit by Special Agent Norman T. Buselmeier of the United States Customs Service. He deposes that on or about May 4, 1976, he was assigned to investigate the petition for remission of forfeiture. The investigation was concluded on or about November 15, 1976. It disclosed that on February 19, 1976, the Customs Office of Investigation at Atlanta received information that a pilot had been offered $20,000 to fly the aircraft in question to Colombia, South America for a load of marijuana. On the same date the Georgia Bureau of Investigation informed the Federal Drug Enforcement Administration that during the previous week Dewey T. Nabors, Jr. had offered a pilot $20,000 to make a flight to South America and had stated that he, Nabors, had been to Colombia twice in the

preceding three months setting up a "grass" deal.

On the basis of information that the airplane would be used to smuggle marijuana into the United States, Customs obtained a federal court order authorizing the placing thereon of a tracking transponder. The aircraft was kept under surveillance by the Georgia Bureau of Investigation until February 25, 1976. Two days later the transponder signal began to be intercepted at the Hampton Air Control Center in Georgia indicating that the plane was airborne and was heading south over Albany. Sometime between 8:45 A.M. and 11:45 A.M. on that date, FAA lost contact with it over Lakeland, Florida.

Nothing more was heard about the aircraft until sometime between 4:30 A.M. and 6:00 A.M. on Saturday, February 28th when the plane landed at the Crisp County Airport at Cordele. Because it is an unusual type (a World War II A–26 B) it attracted considerable attention at the Airport. An officer of the Cordele Police Department looked inside the plane through an open door and observed what appeared to be marijuana debris. Surveillance was established.

On February 28, 1976, word was received that Dewey T. Nabors, Jr., placed a telephone call to an Atlanta aircraft mechanic informing him that the plane was at the Cordele Airport and that the hydraulic door was jammed. He asked the mechanic to go to Cordele, sweep out the plane, and fix the door. This was not done. On the same day the Cordele Airport received a call from the President of Rebel Aviation, Mr. Powell. He inquired whether the police had shown interest in the plane. Powell said that it belonged to Rebel Aviation and stated, "We had to land the plane because the door wouldn't work."

A search warrant was obtained and Federal and State law enforcement officers of the United States Customs Service seized the aircraft on February 29, 1976 for violation of the customs law and delivered it to the District Director's custody.

On March 1st the plane was reported by someone on behalf of Rebel Aviation as having been stolen. The circumstances surrounding the reported theft leave a number of embarrassing questions as far as the Claimant is concerned.

On November 4, 1976, an analysis of gasoline samples taken from the aircraft at the time of seizure was completed. The laboratory report, dated November 8, 1976, indicated that the fuel was manufactured and sold outside the United States.

From the indisputable facts before this Court two conclusions are inescapable: (1) By March 1, 1976, Customs was aware of the major facts as to suspected violation of the laws of the United States by the subject aircraft; (2) Customs either learned nothing or did little to learn more about its case against the accused airplane up to the time the matter was referred to the United States Attorney on December 15, 1976—9½ months after its seizure.[1]

### III

The Government contends that since Rebel Aviation, Inc. was not incorporated until five days after the seizure, plaintiff lacks standing to object to the forfeiture or move for summary judgment. Throughout the proceedings the Government dealt with Rebel Aviation as the sole owner of the aircraft. No other party claims an interest in it. The record shows that Dewey T. Nabors, Jr. purchased the plane on February 12, 1976, from one Harrold "Bubba" Neal for $40,000. That amount was paid in cash. Rebel Aviation claims that the purchase price was $25,000. The bill of sale was in the name of Rebel Aviation, Inc., a Georgia corporation. However, the incorporation was not consummated until March

---

1. I am aware that early in November, 1976, Customs received a fuel analysis report from an independent laboratory which indicated that the fuel in the aircraft was of a type ordinarily procurable only in a foreign country. However, there were other facts indicating an international flight by the B–26, including the presence in the cockpit of aerial maps and information in regard to South America and the Carribean.

5, 1976. Mr. Nabors was the sole stockholder and the capital stock was $1,000. The plane was registered with Federal Aviation Administration in the name of Rebel Aviation, Inc. prior to the incorporation.[2]

This Court finds no genuine issue of fact as to claimant's standing to object to the forfeiture proceeding as owner of the seized property.

## IV

The case was turned over to the United States Attorney on December 15, 1976. The proceeding for forfeiture was filed January 19, 1977, and served on Rebel Aviation, Inc. on January 25, 1977. Claimant filed its claim to the aircraft on February 2, 1977. On February 14th the Secretary of the Treasury denied the petition by Rebel Aviation for remission of fines and forfeiture which had been pending for some ten months.

Plaintiff contends that the delay of nearly eleven months from the time of seizure to the service of the complaint for forfeiture was a violation of the customs laws and amounts to a deprivation of its property without due process of law. It complains that it has lost the use of its aircraft which is a "wasting asset," subject to deterioration without careful maintenance.[3]

When goods are seized by Customs, the seizing officer must report same to the appropriate customs officer "immediately." 19 U.S.C. § 1602. If legal proceedings are required, the customs officer is required to report same to the United States Attorney. 19 U.S.C. § 1603. That officer must, in turn, "immediately" inquire into the facts and, if warranted, institute proper proceedings in the district court to be prosecuted "without delay" for recovery of the fine, penalty or forfeiture. 19 U.S.C. § 1604.

The Government contends that the lack of any "immediacy" requirement under § 1603 contemplates a reasonable delay for investigating the case and processing the petition for remission. See *United States v. One Motor Yacht Named Mercury,* 527 F.2d 1112 (1st Cir.). Obviously, a period must be allowed for inquiring into the facts surrounding the seizure. *United States v. One Wood, 19 Ft. Custom Boat,* 501 F.2d 1327 (5th Cir.). However, the Government cannot delay reporting the case to the United States Attorney indefinitely on the theory of reliance upon a continuing investigation.

The courts have read into § 1603 the requirement of reasonable dispatch. In *States Marine Lines, Inc. v. Shultz,* 498 F.2d 1146, 1155 (4th Cir.) the Court said: ". . . we do not consider it imperative to impose precise time limits on the administrative and judicial forfeiture process, but we do believe that 19 U.S.C. § 1603 must be construed so as to require 'immediate' reporting of the seizure to the United States Attorney for the institution of forfeiture proceeding under § 1604." "[T]he Government cannot unduly and unjustifiably delay in proceeding to a final determination of which party should have proper and legal title to and possession of seized property." *Ivers v. United States,* 413 F.Supp. 394, 398 (N.D., Cal.). Where the delay operates to deny claimant his constitutional and statutory rights to prompt adjudication of rights in the seized property, the forfeiture action must be dismissed. *United States v. One 1971 Pontiac Grand Prix* (C74-2129A, N.D., Ga., May 11, 1976).

As to unreasonable delay, see also *United States v. One Motor Yacht Named Mercury, supra,* 527 F.2d 1112; *Sarkisian v. United States,* 472 F.2d 468 (10th Cir.), cert. den.

---

**2.** An Aircraft Registration Application for the aircraft was filed with the FAA in the name of Rebel Aviation, Inc. by George Powell, President, on February 12, 1976. Exhibit "C" of Claimant's Supplemental Brief. All acts of George Powell as President of Rebel Aviation, Inc. were ratified at the first Directors' meeting. Exhibit "2", attached to affidavit of G.

Roger Land, the attorney for Rebel Aviation. Exhibit "A", Claimant's Supplemental Brief.

**3.** On July 23, 1976, Customs informed plaintiff's counsel that the aircraft was stored at Homestead Air Force Base Field and was being given proper maintenance and protection by experienced personnel. Exhibit I, Motion for Summary Judgment.

414 U.S. 976, 94 S.Ct. 291, 38 L.Ed.2d 219; *Boston v. Stephens*, 395 F.Supp. 1000 (S.D., Ohio); *Lee v. Thornton*, 398 F.Supp. 970, 978 (D. Vermont), rev'd 538 F.2d 27 (2nd Cir.).

V

■ The Government contends that Rebel Aviation contributed to the delay by filing a petition for remission. Under the law, claimant was entitled to petition the Secretary of Treasury to remit a fine or forfeiture.[4] Seeking such administrative relief is neither a waiver of the right to complain about unreasonable delay nor justifies additional delay. See *United States v. A Quantity of Gold Jewelry*, 379 F.Supp. 283 (C.D., Cal.); *United States v. One 1971 Opel G.T.*, 360 F.Supp. 638 (C.D., Cal.).[5] In *United States v. One 1971 Pontiac Grand Prix, supra*, Judge Edenfield of the Northern District of Georgia rejected the argument that "the claimant's filing of a petition for administrative relief somehow tolls the running of the time for the filing of the government's complaint or operates as a waiver of any right to complain of unreasonable delay."

That conception of the law is the antipode of what was held in *Ivers v. United States, supra*, 413 F.Supp. 394 and in *United States v. One 1964 MG*, 408 F.Supp. 1025 (W.D., Wash.). In each of those cases the District Court found that the Government was excused in filing a judicial proceeding so long as the administrative investigation and decision remained unresolved. In the latter decision the District Court said that the better procedure was "completion of the administrative claim followed by filing a civil action if there is no remission." 408

F.Supp. at 1029. While Judge Edenfield did not cite these cases, he recognized the problem and addressed it thusly:

"If the government wishes to pursue a policy of awaiting termination of the administrative remission process before bringing suit, it will simply have to take steps to accelerate the pace at which such petitions for remission or mitigation of forfeiture are processed. If such acceleration is administratively unworkable, forfeiture proceedings must be filed within a reasonable time after seizure to assure, one way or another that a bona fide claimant is afforded the prompt disposition of her claim to which she is entitled."

VI

This Court concludes that a petition for remission does not operate to stay action in respect to the forfeiture proceeding. That theory is better supported by legal authority and makes more sense, in my opinion, than the tolling concept. The latter is not to be found either in the statute or in the Regulations. Since there is no requirement for prompt disposition by the Secretary of Treasury as to petitions for remission of penalties, indefinite delay in instituting forfeiture proceedings is a possibility.

■ The Government explains that it desired to await the administrative determination in order to avoid duplication of effort.[6] It contends that the potential harm flowing from this proposed dual hearing would weigh heavily on the claimant and the entire judicial process.

The pendency of the remission petition should not result in any material delay in the institution of the suit for forfeiture of

4. Upon petition to the Secretary of the Treasury, remission or mitigation of a fine, penalty or forfeiture may be granted if it is found that same was incurred without willful negligence or intention of the person interested in the seized property to defraud the revenue or to violate the law. 19 U.S.C. § 1618. Such a petition must be filed within 60 days after notice by mail of the fine, penalty or forfeiture. 19 C.F.R. § 171.12.

5. In its petition for remission or mitigation (Exhibit E, Motion for Summary Judgment) Rebel Aviation stated that in making its administrative claim under 19 U.S.C. § 1618 it reserved the right to a speedy determination of any forfeiture.

6. The Regulations provide that no action shall be taken on any petition if the civil liability has been referred to the United States Attorney for institution of legal proceedings. 19 C.F.R. § 171.2(a).

offending property. Remission and mitigation of penalties, fines, and forfeiture is an administrative proceeding (19 U.S.C. § 1618) while forfeiture proceedings are judicial.[7] The two remedies overlap to a considerable extent. The same fact situation will ordinarily be operative in both. Of course, consideration and action by the Secretary on the petition for remission is bound to take time. I cannot refrain from remarking, however, that in the present case the imposition of the $1,500 penalty, which took place while the administrative remission proceeding was pending, consumed precious little time on the part of Customs.

This Court is aware of the problems the Customs Service is experiencing as a result of ever-increasing workloads in this area. However, I gain the distinct impression from the record in this case that the delay in the forfeiture proceeding was largely due to the failure to make any real effort to coordinate or speedup the administrative process and the judicial proceeding. It appears that the more persistent Rebel Aviation was in demanding prompt action, the more hardened Customs became in its unwillingness to hurry matters.

██ As remarked earlier, probable cause for forfeiture apparently existed as early as April, 1976.[8] By that time the principal facts of the case against the subject aircraft were known to Customs. As far as this Court can make out, nothing material was subsequently developed. Customs says that the investigation was "completed" on No-

vember 15, 1976.[9] If this means that the Government had been waiting on the receipt of the laboratory analysis of the fuel before closing the investigation, a question inevitably raises itself. Why was the analysis not made 8 months before? There is no showing that in the interim Customs did much, if anything, else in the way of developing the facts. No criminal prosecution has been undertaken.

The Secretary apparently conceived that the petition for remission stopped the clock in reporting the case to the United States Attorney for forfeiture proceedings. In doing so, Customs rejected the array of contrary legal authority which claimant cited in its two petitions for remission.

### VII

██ Ordinarily, an issue as to reasonableness or unreasonableness presents a mixed question of law and fact. 75 Am. Jur.2d § 357. Excusable delay by Customs due to an administrative proceeding for remission in a forfeiture case is "a finding of fact." *United States v. One Motor Yacht Named Mercury, supra,* 527 F.2d at 1114. In proceedings by the Government under the customs statutes the federal court sits as a court of common law and issues of fact are determinable by a jury. 36 Am.Jur.2d Forfeitures and Penalties § 45. In the present case neither side has requested a jury trial. However, the matter is before this Court on motion for summary judgment and not for a bench trial.

---

7. "Penalty" is substantially synonymous with the word "forfeiture." Both indicate a punishment for violation of law. *United States v. Batre,* 69 F.2d 673, 675 (9th Cir.). When property is used in or connected with the act subjecting same to forfeit, forfeiture immediately takes place and the right to the property vests in the Government. However, its title is not perfected until judicial condemnation under which the transfer of property relates back to the time of the act out of which the forfeiture arises. 21 Am.Jur.2d CUSTOMS DUTIES, ETC. § 125; *United States v. Stowell,* 133 U.S. 1, 16–17, 10 S.Ct. 244, 33 L.Ed. 555. Under the customs laws, penalties and fines generally have reference to punishment short of forfeiture and of confiscation of the offending property.

8. ". . . probable cause shall be first shown for the institution of such [forfeiture] suit or action, to be judged of by the court . . . ." 19 U.S.C. § 1615. The burden thereupon shifts to the claimant to prove facts to show why the property should not be forfeited. *United States v. One (1) Wood, 19 Foot Custom Boat, supra,* 501 F.2d 1327.

9. However, in the answer of the District Director to the suit to require action in connection with the forfeiture of the aircraft (it was not filed until December 30, 1976) it is stated that the "Customs *investigation* and administrative processing *is still not complete.*" (Emphasis added).

In the following decisions it has been held that as a matter of law or of fact the delay in instituting forfeiture proceedings deprived the claimant of due process and violated the statutory requirement of promptitude in such cases:

*United States v. A Quantity of Gold Jewelry, supra,* 379 F.Supp. 283. Claimant's motion for summary judgment granted due to twenty-two months delay.

*United States v. One 1971 Opel G.T., supra,* 360 F.Supp. 638. Claimant's summary judgment motion granted because of thirteen and one-half months delay.

*Boston v. Stephens, supra,* 395 F.Supp. 1000. On motion for preliminary injunction, held that six month delay precluded institution of forfeiture proceedings.

*United States v. One Motor Yacht Named Mercury, supra,* 527 F.2d 1112. Affirming grant of claimant's motion to dismiss due to twelve and one-half months delay.

*Sarkisian v. United States, supra,* 472 F.2d 468, cert. den. 414 U.S. 976, 94 S.Ct. 291, 38 L.Ed.2d 219. Reversing verdict of trial court in favor of Government. Held that delay of nine months between completion of the Customs investigation and the filing of forfeiture proceedings constitutes denial of due process.

*States Marine Line, Inc. v. Shultz, supra,* 498 F.2d 1146. Reversing grant of motion to dismiss. A delay of over one year abridges Fifth Amendment rights and may result in personal liability of Customs officials.

*United States v. One 1971 Pontiac Grand Prix, supra,* (C74–2129 A, N.D., Ga., May 11, 1976). Held after non-jury trial that a delay of thirteen months amounts to a denial of due process.

The Fifth Circuit Court of Appeals has not directly dealt with the issue. In *United States v. One (1) 1972 Wood, 19 Ft. Custom Boat, supra,* 501 F.2d 1327 the investigation consumed eight months. Customs then agreed to remit upon payment of storage charges. After the negotiations failed, the United States attorney filed forfeiture proceedings. This was ten months after the seizure. The Circuit Court found that under the circumstances there was a compliance with 19 U.S.C. § 1604. The Fifth Circuit did not specifically reach the due process issue in that case. It has subsequently been held in this Circuit that the district court may require Treasury agents either to begin forfeiture proceedings or to return the seized property. See *Castleberry v. Alcohol, Tobacco and Firearms Division of Treasury Department,* 530 F.2d 672.

This Court finds that no genuine issue of fact exists in respect to the unreasonableness of the delay and the resulting violation of due process and statutory rights. The question here is one of law under the controlling undisputed facts.

Accordingly, the motion of Rebel Aviation for summary judgment must be and it is granted.[10]

## ORDER

(a) Judgment will be entered granting the motion for summary judgment of Rebel Aviation, Inc. The complaint for forfeiture filed in this Court by the United States in connection with the Douglas Aircraft, Serial No. 28034 will be dismissed.

(b) The plaintiff acting through the Customs Service will return the seized aircraft forthwith to claimant. Delivery thereof will be made at the U.S. Air Force Base, Homestead, Florida where the airplane is presently in custody of Customs.

(c) The return of the property to Rebel Aviation, Inc. is subject to and conditioned upon payment of the penalties or fines, totalling $1,500, imposed on July 23, 1976,

---

**10.** I will add, however, that it is no easy decision for this Court to order the return of the plane to Rebel Aviation whose principals, as far as the record indicates, had not previously shown interest in owning vintage aircraft such as the B–26 ("War Bird") type which happens to be quite adaptable to the importation from South America and Mexico of certain contraband.

as a result of a claimed violation of the customs laws.[11]

(d) The subject aircraft will be delivered to Rebel Aviation, Inc. or its authorized representative upon compliance with subparagraph (c) hereof and without obligation by the claimant for cost or expense connected with its custody, storage or maintenance since the seizure on February 29, 1976.

(e) No costs are awarded against the United States. See 28 U.S.C. § 2465.

---

11. The Secretary's denial of petitions for remission of penalties and forfeitures is not judicially reviewable. See *United States v. One 1970 Buick Riviera*, 463 F.2d 1168, 1170 (5th Cir.), cert. den. 409 U.S. 980, 93 S.Ct. 314, 34 L.Ed.2d 244. In the proceeding before this Court claimant does not seek remission of the monetary penalties that were imposed. ·