**H. Medill SARKISIAN, Appellant,**

v.

**UNITED STATES of America, and Kelly Tipps, Port Director of Customs for State and District of Colorado, Appellees.**

**UNITED STATES of America, Appellee,**

v.

**ONE PACKAGE OF ANTIQUES AND INDIAN JEWELRY, Appellant.**

**No. 72–1115.**

United States Court of Appeals, Tenth Circuit.

Argued and Submitted Sept. 20, 1972.

Decided Jan. 24, 1973.

Rehearing Denied March 9, 1973.

Albert B. Wolf, of Meer & Wolf, Denver, Colo. (Walter Slatkin, Denver, Colo., with him on the brief), for appellant.

Charles W. Johnson, Asst. U. S. Atty. (James L. Treece, U. S. Atty., with him on the brief), for appellees.

Before PHILLIPS, SETH, and HOLLOWAY, Circuit Judges.

SETH, Circuit Judge.

Two suits were filed in the United States District Court for the District of Colorado concerning an air shipment of jewelry which arrived at Denver, Colorado, from Lebanon. The jewelry was seized by customs agents when the container was opened at the airport. The owner filed an action to recover it, and the Government filed proceedings to forfeit the shipment. The suits were consolidated and the trial court held for the Government. The owner has taken this appeal which raises several issues, including the constitutional implications in the delay by the Government in instituting forfeiture proceedings, the failure of proof by the Government, the unconstitutional burden of proof placed on the owner by statute, and that attempted forfeiture of all the items in the container was improper.

The record shows that the owner bought old jewelry in the Near East, and sent a suitcase containing some jewelry from Beirut to Denver. The shipment arrived at Denver while the owner was still in Europe. Upon its arrival, the carrier asked a representative of the owner's customs broker if he would receive it. This representative did not usually handle the owner's shipments, so he called the owner's office and was told to do the "paper work" on the bag. However no information as to the contents or the invoices was given to the representative and he had no such information from other sources other than invoices given him by the carrier. Some of the invoices had been attached to the outside of the parcel, and as it later developed some were inside and one was missing. The representative, in the presence of the customs agent, made out a form of Application for Immediate Delivery (AID) under 19 C.F.R. § 8.59, and attached the invoices given to him by the carrier. These invoices indicated that practically all of the items they covered were antiques. The representative wrote on the AID form "antiques." The bag was opened by customs, and it was revealed that the invoices attached to the AID form did not cover the entire contents of the bag, that other invoices were wrapped in small parcels in the bag and one was missing. The agent seized the shipment on April 24, 1969, apparently because all the invoices were not presented. When the owner returned he presented the missing invoice on May 13, 1969. The customs authorities took the position that all the items in the bag were not antiques and there was correspondence on this point. The goods were sent to New York twice for examination as to their antiquity. The invoices did not describe all the items as antique. However, the owner in a letter dated May 26, 1969, did assert to customs that all were antiques, and asked about the status of the matter. This claim that all were antiques was obviously wrong, and he later retracted this as to some of the items. This letter was taken by the officials to be a request for remission or mitigation of penalties under 19 U.S.C. § 1618, and an investigation was conducted. Five of the items were returned to the owner as being antiques. The investigation was concluded on September 16, 1969, and a report submitted. There was later correspondence on the antique subject, and inquiries by the owner as to the status of the matter. The explanations given by the owner as to why one invoice was missing were implausible, but the absence of the invoice was not a real issue in the case although considerable consideration was given to the matter. The regulations do not require all invoices to be presented with the Application for Immediate Delivery. The issue before suit related to the antique question as indicated by the return of some items to the owner.

The owner filed suit on April 28, 1970, to have the goods returned to him, some conferences were had, and the United States Attorney indicated that he would file suit within thirty days if the matter was not resolved. The thirty days expired and no such suit was filed. The trial judge's secretary then called the United States Attorney to remind him of the thirty day period. The Government suit seeking forfeiture was filed a few days thereafter on June 24, 1970. The antique issue continued at the trial, and the Government there acknowledged that some of the remaining items were antiques, and did not contest the claim as to others. However, it continued to assert that some of the jewelry was not antique.

■ We consider the delay in commencing proceedings by the Government to be the basic issue on appeal. The owner of the goods urges that the delay by the collector in taking action under 19 U.S.C. § 1603 to report to the United States Attorney that the seizure had been made constituted a violation of his constitutional rights, and was also a failure to follow the statutory provisions properly construed. The owner relies on requirements for protection of Fifth

Amendment rights mentioned in United States v. United States Coin & Currency, 401 U.S. 715, 91 S.Ct. 1041, 28 L.Ed. 2d 434, concerning a forfeiture sought under 26 U.S.C. § 7302, and the requirements read into 19 U.S.C. § 1305(a) in United States v. Thirty-Seven Photographs, 402 U.S. 363, 91 S.Ct. 1400, 28 L.Ed.2d 822, for its constitutional "salvation" under Freedman v. Maryland, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649.

We view the delay issue here presented as having essentially the same implications, and involving the same principles as were considered in Thirty-Seven Photographs. As hereinafter indicated we consider only one segment of the total time which elapsed.

The pertinent statutory provisions relating to the delay issue are as follows:

19 U.S.C. § 1602 provides in part:

"It shall be the duty of any officer, agent, or other person authorized by law to make seizures of merchandise or baggage . . ., to report every such seizure immediately to the appropriate customs officer for the district. . . ."

9 U.S.C. § 1603 provides in part:

"Whenever a seizure of merchandise for violation of the customs laws is made, . . . and legal proceedings by the United States attorney in connection with such seizure . . . are required, it shall be the duty of the appropriate customs officer to report such seizure or violation to the United States attorney for the district . . . ."

19 U.S.C. § 1604 provides in part:

"It shall be the duty of every United States attorney immediately to inquire into the facts . . ., and if it appears probable that any fine, penalty, or forfeiture has been incurred by reason of such violation, for the recovery of which the institution of proceedings in the United States district court is necessary, forthwith to cause the proper proceedings to be commenced and prosecuted without delay, . . . unless, upon inquiry and examination, such United States attorney decides that such proceedings can not probably be sustained . . ., in which case he shall report the facts to the Secretary of the Treasury for his direction in the premises."

It is apparent that the sections referring to the officer making the initial seizure and to the United States Attorney require immediate action. Section 1603 relating to the collector to whom the seizure is reported contains no language requiring expeditious determination of whether forfeiture proceedings are required. It is this section which is concerned here with the Government taking the position that no time limitation should be placed on this step in the proceedings. The owner of the goods seized asserts that such application of the section and the delay here involved violate his Fifth Amendment rights, if the decision in Thirty-Seven Photographs is here applied.

A brief summary of the time sequence shown by the record is necessary:

(1) Date of seizure of goods—April 24, 1969.

(2) All invoices furnished to customs —May 13, 1969.

(3) Sarkisian's letter claiming that all items were antique and inquiring as to status of matter—May 26, 1969.

(4) Investigation by customs completed—September 16, 1969 (further correspondence followed, however).

(5) Sarkisian filed suit seeking return of goods—April 28, 1970. This is one year after seizure.

(6) Government agreed to file suit within thirty days—May 18, 1970.

(7) Owner filed motion for return of goods—June 18, 1970.

(8) Suit filed by Government seeking forfeiture—June 24, 1970 (this is a year and two months after seizure).

We give consideration only to the period of time which elapsed between the

date the customs investigation was completed, and the filing of the action to forfeit by the United States Attorney. This is the period between September 16, 1969, and June 24, 1970, or about nine months. As mentioned the Government suit was not started until after the owner had filed suit to have the goods returned to him, and after a suggestion plus a reminder by the trial court to do so in the face of the owner's motion for return of goods. This lapse of time was too great under the statute sought to be used by the Government, and under the opinion of the Supreme Court in United States v. Thirty-Seven Photographs.

We have quoted portions of 19 U.S.C. §§ 1602 and 1604. These require that the customs agent making the seizure ". . . report every such seizure immediately to the appropriate customs officer for the district . . ."; that the customs officer ". . . report such seizure or violation to the United States attorney . . ."; and that the United States attorney ". . . immediately inquire into the facts . . .," and if proceedings in the United States District Court are necessary ". . . forthwith to cause the proper proceedings to be commenced and prosecuted without delay . . .," and to otherwise report the facts to the Secretary of the Treasury. The admonitions to report "immediately" and to "forthwith" file an action directed to the seizing officer and to the United States Attorney are a sufficient indication that the proceedings in between the "immediately" and the "forthwith" must also be conducted with comparable dispatch if the several sections are to be construed to sustain them against an attack directed to their constitutionality. Thus the collector, or principal local officer, of the Customs Service referred to in 19 U.S.C. § 1603 must also proceed to perform his functions as quickly, although the section of the statute referring to him does not expressly provide for action within a specified time nor "immediately." It is apparent that the expedited proceedings by the seizing agent and by the United States Attorney can mean little if between the two there is a delay of any consequence, as there was in the case before us.

■ The Supreme Court in a footnote at 402 U.S. 368, 91 S.Ct. 1400 to United States v. Thirty-Seven Photographs refers to 19 U.S.C. §§ 1602 and 1604. The Court there considers the suggestion by the United States that the limitations stated in the two sections be applied in Thirty-Seven Photographs to cure the deficiency in 19 U.S.C. § 1305(a). The Court quotes the "immediately" and the "forthwith" and says:

> "We need not decide, however, whether §§ 1602 and 1604 can properly be applied to cure the invalidity of § 1305(a), for even if they were applicable, they would not provide adequate time limits and would not cure its invalidity. The two sections contain no specific time limits, nor do they require the collector to act promptly in referring a matter to the United States Attorney for prosecution. Another flaw is that § 1604 requires that, if the United States Attorney declines to prosecute, he must report the facts to the Secretary of the Treasury for his direction, but the Secretary is under no duty to act with speed. The final flaw is that neither section requires the District Court in which a case is commenced to come promptly to a final decision."

Thus the Court points out that neither section contains a specific time limit, and also that there is no requirement that the collector act promptly in referring the matter to the United States Attorney. Thus for the proceedings here taken to be upheld against the owner's objections, it was necessary for the collector to have acted with dispatch. The lapse of nine months after the completion of the investigation did not meet such a requirement, and the Government's proceeding to forfeit must fail.

■ Again in United States v. Thirty-Seven Photographs, 402 U.S. 363, 91

S.Ct. 1400, 28 L.Ed.2d 822, the Court laid down a time requirement which is extremely short compared to the several time periods in this case. 19 U.S.C. § 1305(a) there considered by the Supreme Court contained no time periods nor direction to proceed with great dispatch, but the Court found such requirement to be necessary to salvage the statute in the face of the attack on its constitutionality. The Court was there concerned with the seizure by customs officials of the photographs as obscene as against the First Amendment claim of the person bringing them into the country. The photographs were to become part of a book to be published, and the importation was for a commercial use. The censorship aspects of the Thirty-Seven Photographs case, as related to the need for prompt action, does not distinguish the case as the Government here urges. The withholding of Sarkisian's property under the circumstances before us presents a constitutional claim of no less dignity than that arising from the dirty pictures. We thus apply the same principles. The time necessary to decide that the obscene nature of the photographs required that suit be brought would not seem to be a great deal different than the time required to decide to bring suit because the goods were entered by means of fraudulent invoices, declarations, paper, or false statement under 19 U.S.C. § 1592, and certainly not after customs had completed its investigation or has had reasonable time to do so. Thus 19 U.S.C. § 1603 must also contain time limitations comparable to the section preceding it and the one following, and we construe the section to so provide. For these purposes we consider it to be constitutional when so read, but it has obviously not been complied with. See Crowell v. Benson, 285 U.S. 22, 52 S.Ct. 285, 76 L. Ed. 598.

The judgment of the trial court is set aside, and the case is reversed and remanded with the direction to grant Sarkisian's motion to have the goods in issue released and delivered to him.