**UNITED STATES of America, Plaintiff,**

v.

**A QUANTITY OF GOLD JEWELRY, Charles Naywert, Ltd., Defendants, Charles Naywert, Ltd., Claimant.**

**Civ. No. 73-2839-R.**

United States District Court,
C. D. California.

July 3, 1974.

William D. Keller, U. S. Atty., Los Angeles, Cal., for the U. S.

Boccardo, Blum, Lull, Niland, Teerlink & Bell, James F. Boccardo, Los Angeles, Cal., for defendants.

## MEMORANDUM OPINION AND ORDER

REAL, District Judge.

Basing its claim for relief on an alleged denial of due process arising out of the government's seizure of its property pursuant to the provisions of the Tariff Act of 1930, § 603, 19 U.S.C. § 1603, Charles Naywert, Ltd., (hereinafter Naywert), the claimant herein, has moved the court for an order granting summary judgment on its behalf. Such a judgment would serve, if granted, to return to Naywert a quantity of gold jewelry, worth in excess of $140,000, which was confiscated by the government on January 21, 1972 and which now forms the basis for the instant forfeiture action.[1]

Naywert was engaged in conducting a retail jewelry business in Palm Springs, California, at all times relevant to this lawsuit; and in connection therewith, its president, Charles Naywert, visited Italy in July of 1971 and there purchased the items of jewelry currently appraised by the Bureau of Customs at $143,667.00. The jewelry was shipped to Los Angeles for delivery to Naywert between September and November of 1971; but, during the course of these shipments, several alleged discrepancies in Naywert's purchase orders were discovered by Naywert's customs house brokers in Italy who then brought this information to the attention of the United States Bureau of Customs in Los Angeles, California. Upon discovering the possibility of the use of devalued invoicing procedures in connection with its jewelry shipments, Naywert immediately

---

1. In actuality, Naywert's original claim requesting a return of its property and damages for its unlawful detention antedates by almost one full month the government's instant claim. The government brought a motion to dismiss pursuant to Rule 12 of the Federal Rules of Civil Procedure, maintaining that Naywert had failed to state a claim upon which relief might be granted. The government's motion was granted as to Naywert's claim for damages; but, as to Naywert's claim and prayer for the return of its property, the government's motion was granted only to the limited extent that Naywert's original claim was to be deemed a counterclaim in the instant action.

proceeded to pay all additional duties due under newly-issued and corrected invoices.

The government, nonetheless, commenced an investigation of the possibility of Naywert's false invoicing in late December, 1971, and issued a report of its investigations and concomitantly seized Naywert's jewelry in late January, 1972. The government notified Naywert at that time that the jewelry was subject to forfeiture under the provisions of 19 U.S.C. §§ 1602–1604,[2] and further indicated in early February, 1972, that an additional penalty of $4,370.00 would be assessed on certain pieces of jewelry which had previously been sold by Naywert and which were, therefore, incapable of being the object of a government forfeiture action.

It was at this point, in mid-February, 1972, that there commenced a series of events which ultimately served to deprive Naywert of the use of and profit from its jewelry for nearly twenty-two months. This delay forms the basis for Naywert's current due process allegations.

On February 18, 1972, Naywert petitioned the Commissioner of Customs for remission or mitigation of the originally assessed liability for forfeiture. After a lengthy investigation spanning the months of April through October of 1972, the Los Angeles District Director of the Bureau of Customs informed Naywert in early December of 1972 that it was the decision of the Department of the Treasury to remit forfeiture and the claim for forfeiture value upon Naywert's payment of $40,355.00. Naywert, however, was apparently unimpressed with the Bureau's proposed resolution of the matter and consequently filed a supplemental petition with the Commissioner on February 6, 1973, requesting reconsideration of the Bureau's former decision. Nevertheless, it was not until November 1, 1973 that Naywert was notified that its supplemental petition had been denied, a mere two weeks prior to the point at which the government commenced the instant forfeiture litigation.

Yet, during the time in which his administrative petitions were under consideration, Naywert was evidently not satisfied to rely solely upon the reticular, time-consuming investigative and decision-making procedures of the Bureau of Customs. Ever aware that a prolonged delay in the resolution of the controversy might ultimately inure to the detriment of its jewelry trade, Naywert offered on August 30, 1972 to post a surety bond with the government in the amount of $133,000.00 to secure the release of its jewelry, but the Bureau declined to act on said offer. In late October, 1972, Naywert attempted to effectuate a return of its jewelry, pending a judicial determination of the validity of the government seizure, by filing suit in the Central District of California which

2. The pertinent statutory provision relating to the delay issue are as follows:

19 U.S.C. section 1602 provides in part:
"It shall be the duty of any officer, agent, or other person authorized by law to make seizures of merchandise or baggage . . . ., to report every such seizure immediately to the appropriate customs officer for the district."

19 U.S.C. section 1603 provides in part:
"Whenever a seizure of merchandise for violation of the customs laws is made, . . . and legal proceedings by the United States attorney in connection with such seizure . . . are required, it shall be the duty of the appropriate customs officer to report such seizure or violation to the United States attorney for the district. . . . . "

19 U.S.C. section 1604 provides in part:
"It shall be the duty of every United States attorney immediately to inquire into the facts . . . . , and if it appears probable that any fine, penalty, or forfeiture has been incurred by reason of such violation, for the recovery of which the institution of proceedings in the United States district court is necessary, forthwith to cause the proper proceedings to be commenced and prosecuted without delay, . . . . unless, upon inquiry and examination, such United States attorney decides that such proceedings can not probably be sustained . . . ., in which case he shall report the facts to the Secretary of the Treasury for his direction in the premises."

prayed for an Order of Reclamation; but said action was dismissed by the Court on the stated grounds of lack of jurisdiction. The undaunted Naywert then endeavored to deposit the mitigated amount of $40,355.00 in a trust account in return for the release of its jewelry, pending the final disposition of the matter; but the Bureau of Customs likewise rejected this approach. Finally, Naywert commenced an action in this Court on November 17, 1973 seeking review of the government forfeiture procedures and recovery of its jewelry. It is, therefore, in connection with the relief sought therein that Naywert brings the motion presently under consideration.

The issue as currently presented to this court by the claimant's motion may be stated quite simply: Does a governmental delay of some twenty-two months in bringing a forfeiture action under the provisions of the Tariff Act of 1930, § 610, 19 U.S.C. § 1610 [3] constitute a denial of due process when the government continuingly detains the items in question during this period? This court. persuaded by the reasoning in Sarkisian v. United States, 472 F.2d 468 (10th Cir. 1973), cert. den., 414 U.S. 976, 94 S.Ct. 291, 38 L.Ed.2d 219 (Oct. 23, 1973), feels compelled to answer in the affirmative.

In *Sarkisian, supra,* the district court had consolidated two actions relating to a quantity of jewelry which had been confiscated by the Bureau of Customs some fourteen months prior to the commencement of the first claim. This first cause of action had been brought by the alleged owner of the goods slightly in excess of one year after they had been originally seized by Customs officials due to the allegedly false invoicing of the property in question. The second action, a petition for forfeiture, was brought by the government some two months later. Citing United States v. U. S. Coin and Currency, 401 U.S. 715. 91 S.Ct. 1041, 28 L.Ed.2d 434 (1971) for the proposition that the protections of Fifth Amendment due process attach to forfeiture proceedings, the court in *Sarkisian, supra,* held that a claimant may bring suit to compel the government to immediately institute forfeiture procedures or, in the alternative, to return the confiscated goods forthwith. In any event, noted the *Sarkisian* court, a nine month governmental delay between the conclusion of the forfeiture investigation and the commencement of a forfeiture action constituted an impermissible taking under Fifth Amendment due process, which taking ultimately mandated the immediate return of the confiscated jewelry.

In a similar manner, the court in United States of America v. One 1971 Opel G.T., 360 F.Supp. 638 (C.D.Cal. 1973) held, as did the *Sarkisian* court, that concepts of procedural due process do adhere to government forfeiture proceedings and that, to comport with these due process imperatives, such proceedings must afford the claimant of seized property a "prompt" day in court.[4]

"Now, if anything is clear from the statutory scheme [relating to forfeiture], it is that claimants are entitled to prompt proceedings in *all* stages of the forfeiture machinery. The word 'immediately' is used in describing the duties of the seizing officer to report his seizures to the Collector . . . § 1602. And the U.S. Attorney's duty

---

3. 19 U.S.C. section 1610 provides:
   "If the value returned by the appraiser of any vessel, vehicle, merchandise, or baggage so seized is greater than $2,500., the collector shall transmit a ·report of the case, with the names of available witnesses, to the United States attorney for the district in which the seizure was made for the institution of the proper proceedings for the condemnation of such property."

4. *See also,* Truth Seeker Co. v. Durning, 147 F.2d 54 (2d Cir. 1945) and In re Behrens 39 F.2d 561 (2d Cir. 1930), both of which seem to authorize the bringing of suits by aggrieved owners, whose property has been impermissibly detained by an unduly long delay in the institution of forfeiture proceedings, in order to compel the government to either commence a forfeiture petition in district court or to return forthwith the property seized.

is to 'immediately' inquire into the facts and to 'forthwith' institute court proceedings . . . § 1604." *Id.* at 641 (emphasis added).

Moreover, observed the court in *One 1971 Opel, supra,* the fact that a claimant may decide to avail himself of certain administrative procedures in order to avoid forfeiture, as Naywert did here, does not justify nor permit the government to delay in bringing a forfeiture action; for "[t]here is nothing whatever to preclude a continued processing of the administrative claim in the Treasury Department after the Government's petition is filed in district court." *Id.* at 641.

■ Hence, in light of the considerations of the *Sarkisian, supra,* and *One 1971 Opel, supra,* courts, it is manifestly clear that, in order for the confiscation procedure under the Tariff Act of 1930, § 610, 19 U.S.C. § 1610, employed in the case at bar, to pass constitutional muster, the aggrieved claimant must be afforded a prompt hearing on the alleged violations of the Customs laws. *See also, Truth Seeker Co., supra.* All these courts have indicated that this "speedy" hearing provision is to be "read into" the Act itself, thereby making the Act at least facially constitutional.[5] However, any undue delay in the commencement of a forfeiture hearing has been held to be a violation of Fifth Amend-

ment due process, necessitating the return of the confiscated property by the government. *Sarkisian, supra,* 472 F.2d at 472; *One 1971 Opel, supra,* 360 F. Supp. at 642; *Truth Seeker Co., supra,* 147 F.2d at 56.

■■ Turning, then, to the facts of the instant case, the court notes that the government is hardpressed to explain, much less justify, the twenty-two month delay in the bringing of this forfeiture action. The affidavit filed in opposition to the claimant's motion, which undertakes to describe the various investigative and quasi-judicial proceedings employed by the government in this case, does little to enhance the government's position since, as previously noted, the fact that the claimant may have pursued certain administrative remedies does not serve to justify a governmental delay in the institution of a forfeiture action. *One 1971 Opel, supra,* 360 F.Supp. at 641. Moreover, the government's insistence that laches may not be asserted against the United States in forfeiture proceedings and that the instant action is timely in light of the five year statute of limitations prescribed for it by Congress[6] utterly misses the mark; for neither the equitable doctrine of laches nor an Act of Congress may serve to abridge an individual's right under the Fifth Amendment to due process of law, guaranteeing, as it does, a speedy deter-

---

5. *See also,* United States v. Thirty-seven Photographs, 402 U.S. 363, 91 S.Ct. 1400, 28 L.Ed.2d 822 (1971) [where the court "read into" 19 U.S.C. section 1305(a), which prohibits the importation of obscene material, very specific time limitations for the institution of judicial proceedings for their forfeiture.] While the government maintains that it is only the nature of the material seized, i. e., material touching upon the First Amendment protection of free speech, which justifies this result, it is clear that the Fifth Amendment mandates of due process have been employed to offer some substantial protection against governmental deprivation of the *use* of property, even if the deprivation is only temporary. *See,* Sniadach v. Family Finance Corp., 395 U.S. 337, 342, 89 S.Ct. 1820, 1823, 23 L.Ed.2d 349 (1969) (Harlan, J., *concurring*) [where the "'property' of

which petitioner has been deprived is the *use* of the garnished portion of her wages." (original emphasis)]; Washington ex rel. Title Trust Co. v. Roberge, 278 U.S. 116, 49 S.Ct. 50, 73 L.Ed. 210 (1928) [where unreasonable zoning restrictions were held to violate Fourteenth Amendment due process by depriving the property owner of certain *uses* of his property]; McKay v. McInnes, 279 U.S. 820, 49 S.Ct. 344, 73 L.Ed. 975 (1929) aff'g. per curiam 127 Me. 110, 141 A. 699 (1928) [in attachment proceeding the legal right to *use and derive a profit from property* is property]; United States v. General Motors, 323 U.S. 373, 378, 65 S.Ct. 357, 359, 89 L.Ed. 311 [in an eminent domain proceeding, due process "is addressed to every sort of interest the citizen may possess."].

6. 28 U.S.C. section 2642.

mination of a claimant's interest in a particular piece of confiscated property.[7]

■ Indeed, where, as here, the forfeiture action authorized by statute addresses itself merely to the protection of the revenue of the United States and not to proscriptions against the importation of contraband, Congress has specifically provided for the claimant's posting of a surety bond in order to secure the return of the confiscated property to him pending the ultimate determination of the forfeiture proceeding. Tariff Act of 1930, § 619, 19 U.S.C. § 1619. While the provision ostensibly rests discretion in the hands of the Secretary of the Treasury to determine whether the Department will accede to the offered posting of the bond, it appears to have been an abuse of this discretion for the Secretary to refuse Naywert's two offers to post bonds and then to prolong the institution of forfeiture proceedings for nearly two years.[8] It was the effect, if not the intent, of such governmental refusal to deprive Naywert of the use of his property for an unconscionably prolonged period and, perhaps, by the imposition of such sustained deprivation, to coerce Naywert into acquiescing into a settlement which may have been both unjust and unnecessary. *Sniadach, supra,* 395 U.S. at 341, 89 S.Ct. 1820. Consequently, it is the holding of this court that the government's unjustifiable delay in the commencement of forfeiture proceedings served to deprive the claimant herein of the use of his property and the profits to be derived therefrom in violation of the precepts of the Fifth Amendment,[9] an action by the government which this court fails to understand let alone countenance.[10]

It is, therefore, hereby ordered that the quantity of jewelry currently in the hands of the government to which the

7. *But see,* United States v. One 1969 Buick Convertible, 481 F.2d 1407 (7th Cir. 1973) [where the court, in an unreported decision, ruled that laches may not be asserted against the government in light of a three year delay in the bringing of a forfeiture action but failed to consider the due process implications of such a delay] ; *see also,* United States of America v. One 1967 Mercedes Benz, Civil No. 73–1667–WPG, (C.D.Cal. 1974) [where the court ruled that due process precepts attach to a forfeiture delay involving a "wasting asset," such as an automobile's depreciation while in the hands of the government, but declined to hold that a claimant's prolonged deprivation of the use of his property invokes the protections of Fifth Amendment due process.]

8. As noted above, Naywert made two distinct offers to the Department of Treasury to post surety bonds in exchange for the return of its property—one directed at the entire worth of the jewelry involved and any penalties imposed thereon and the other encompassing the mitigated damages subsequently assessed by the Bureau of Customs.

9. What may be seen by some as the less than reluctant retreat of the current Supreme Court from the "broad brush" application of due process exercised by its predecessor, [*compare,* Calero-Toledo v. Pearson Yacht Leasing Co., 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974) *and* Mitchell v. W. T. Grant Co., 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974) *with* Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed. 2d 556 (1972)], appears to be restricted to the consideration of what circumstances militate a notice and hearing requirement prior to governmental seizure or deprivation of an individual's property. This court is unpersuaded that the recent posture of the Supreme Court in matters touching upon due process would be antithetical to the holding herein. *See, e. g.,* United States of America v. Thirty-seven Photographs, *supra.*

10. While it is clearly the thrust of this decision that the burden is on the government to celeritously "go forward" with a judicial resolution of any alleged grounds which might justify the forfeiture of an individual's property, a claimant's failure to timely apprise the courts or the proper administrative agency of a governmental delay in the prosecution of his claim *might* be considered tantamount to laches, an equitable doctrine which would serve to preclude a finding favorable to a claimant of a due process violation, such as that advanced herein. Nevertheless, this court need not reach this issue in light of Naywert's diligent attempt to call the government's delay to the attention of the Court by means of its erstwhile, albeit unsuccessful, Petition for Reclamation filed in October of 1972.

movant herein lays claim shall be forthwith returned to the claimant and that summary judgment, consonant with this opinion, be entered on behalf of Naywert in this matter.