**Lincoln C. WHITE, Plaintiff-Appellee,**

**John B. Ford, Intervenor-Appellee,**

**v.**

**Vernon D. ACREE, Director of Customs, United States Department of Treasury, Defendant-Appellant.**

**No. 77–1124.**

United States Court of Appeals, Tenth Circuit.

Submitted June 26, 1978.

Decided March 30, 1979.

Utah, Edward L. Gilmore, Regional Counsel of Customs, and Patricia K. Myers, Atty., Office of Regional Counsel of Customs, San Francisco, Cal., for defendant-appellant.

Jonathan K. Bellsey and Bruce Zagaris of Glad, Tuttle & White, San Francisco, Cal., for intervenor-appellee John B. Ford.

Alvin I. Smith, Salt Lake City, Utah, for plaintiff-appellee Lincoln C. White.

Before SETH, Chief Judge, and DOYLE and LOGAN, Circuit Judges.

LOGAN, Circuit Judge.

This is an appeal from a district court order granting a mandatory injunction and ordering the return of seized jewels entered against the Director of Customs, United States Department of Treasury, in a suit filed by Lincoln C. White. The jewels had been seized by customs agents for alleged violation of United States customs laws. The court based its grant of injunctive relief and return of the jewels on grounds that the delay between the date of seizure and referral to the United States attorney's office as contemplated by 19 U.S.C. § 1603, which referral had not been made at the time White's suit was commenced, violated plaintiff White's and intervenor John B. Ford's rights to due process under the Fifth Amendment to the United States Constitution. Our consideration on appeal will be limited to an evaluation of those assertions.

Because the case was decided on the procedural due process issue conflicts in the facts asserted by the various parties were not fully resolved. It appears, however, that Pakistani Prince Hasan Kahn, an immigrant to the United States, brought the jewelry at issue into this country in 1974. The items were offered for sale through a Los Angeles auctioneer in September of 1974, pursuant to an agreement entered into prior to their entry into the United States. No customs duty was paid by Prince Kahn, and the government alleges the jewels were not declared at the time of

Ramon M. Child, U. S. Atty., and Brent Ward, Asst. U. S. Atty., Salt Lake City,

entry. Few, if any, of the jewels were sold. Ford contends they were withdrawn from sale because of a change of mind by Prince Kahn. The jewels seized came into the hands of Ford under a contract with Kahn, who now apparently has left the United States. Ford pledged them to White as security for a $25,000 loan from a Salt Lake City bank which White guaranteed on his behalf. Another security interest was given in the jewels for a $50,000 advance guaranteed by Alma C. Clark, who has apparently acquired the interests of White in this lawsuit. Clark and Ford now are the real parties in interest in this litigation against the Director of Customs.

Having received a tip from an informer, undercover customs agents, posing as individuals interested in buying the jewels or loaning money on their security, induced Ford and a representative of White to display the items in a Salt Lake City bank, where they had been kept in a safe deposit box. After identifying the jewels as those originally offered for sale through the Los Angeles auctioneer, the agents revealed their identity and claimed the jewels on behalf of the United States.

The seizure occurred February 10, 1976. On April 10, 1976, Clark filed what was treated by the Customs Service as a petition for relief under 19 U.S.C. § 1618. Counsel for White by letter dated April 21, 1976, requested an extension of 90 days to file a "petition in this matter" with the Customs Service, which was filed on June 10, 1976. Counsel for Ford and Kahn on April 16, 1976, requested indefinite extensions of time to file petitions for relief, and was granted until 30 days from disposition of the criminal aspects of the case. A petition on behalf of Ford was filed September 30, 1976, and amended extensively October 19, 1976. The instant suit for return of the jewels was filed by White on November 3, 1976.

The government contends that the importation of the jewels without declaration and payment of customs duty violates 18 U.S.C. §§ 542 and 545, and 19 U.S.C. §§ 1497 and 1592, since Kahn intended to sell them. Seizure is said to be authorized by 19 U.S.C. §§ 482 and 1581 and 19 C.F.R. § 162.21(a) (1978). For purposes of this appeal we assume that the seizure was properly made, and treat only the procedural due process issues.

Congress has enacted a statutory scheme designed to resolve relative interests in goods seized under the customs law. 19 U.S.C. § 1602 requires any agent involved report "immediately" any seizure to the appropriate customs officer within the Service, turn the item over to him, and report "immediately" every violation of customs law. Whenever a seizure is made "and legal proceedings by the United States attorney in connection with such seizure or discovery are required," 19 U.S.C. § 1603 requires the appropriate customs officer report to the U.S. attorney and include all facts known and the law relied upon for the customs action. No specific time limits are stated in that section. Then 19 U.S.C. § 1604 states that the United States attorney to which it has been reported shall "immediately" inquire into the facts and laws with respect to the alleged violation if it appears the law has been violated, and "forthwith" cause the proper proceedings to be commenced and prosecuted "without delay," for forfeiture or other action required. In *Sarkisian v. United States,* 472 F.2d 468 (10th Cir.), *cert. denied,* 414 U.S. 976, 94 S.Ct. 291, 38 L.Ed.2d 219 (1973), this Court read into § 1603 a prompt action requirement similar to those contained in §§ 1602 and 1604.

It is the contention of the government, however, that where a petition for remission or mitigation has been filed under 19 U.S.C. § 1618, here invoking an administrative proceeding within the Department of the Treasury for relief from forfeiture, the obligation to report the violation to the U.S. attorney is suspended until the termination of the administrative proceeding, no matter how long that takes.

The government reasons that the referral to the United States attorney is to be made only if legal proceedings are required, and since more than 90% of the cases in which petitions for remission or mitigation are filed are resolved without court action, it was the intent of Congress to toll the application of the referral provision during the pendency of the administrative proceeding. Further, it argues that utilization of the administrative process is voluntary on the part of the individual claiming an interest in the seized property. Since he can invoke the referral simply by not filing a petition, he should be considered to have waived any requirement of prompt referral by seeking administrative relief. Its regulations carry out this approach, providing for "immediate" referral to the U.S. attorney if no petition for relief is filed within 60 days from the date notice was given of the seizure. 19 C.F.R. § 162.32(a) (1978). They also state, "No action shall be taken on any petition if the civil liability has been referred to the United States attorney for institution of legal proceedings. The petition shall be forwarded to the United States attorney." 19 C.F.R. § 171.2(a) (1978). Its new form of notice, not used in the instant case, purports to treat the filing of a petition for relief with the Customs Service as an express request that the Service not refer the matter to the U.S. attorney while the administrative petition is pending.

In this connection the government notes that in *Sarkisian* the individual whose goods were seized filed a letter of inquiry which was treated as a petition for relief under 19 U.S.C. § 1618. It was only the period after conclusion of the resulting investigation that was considered by this Court in determining that due process rights were denied. 472 F.2d at 470–71.

White denies that he ever filed a petition for remission or mitigation, and instead characterizes his attorney's correspondence as making a simple demand for return of the seized goods based upon legal arguments. It is true that the arguments set forth in the correspondence between White's counsel and the Customs Service are almost entirely legal. Nevertheless, White's counsel, a former Deputy Commissioner of Customs, in his April 20 letter requested a 90-day extension of time to file a "petition." The document which he filed in letter form characterizes itself as "a petition in the above matter and is a demand for release of the merchandise under seizure." In an August 2 response the Customs Service characterized the earlier letter as a "petition for relief" and this was not contested in White's counsel's August 31 response. We think the actions on behalf of Clark, White and Ford all must be considered petitions for remission or mitigation under 19 U.S.C. § 1618.

The trial court relied upon *Sarkisian* as not countenancing any waiver of due process rights by filing a petition for relief with the Customs Service. Thus, although a petition might be filed, the Service was required to respond promptly. The court found no intention on the part of Congress to suspend the due process requirements during such administrative appeal, at least absent knowledge by a claimant that his petition would be so treated.

We agree with and reaffirm our holding in *Sarkisian*. In determining that the Customs Service must refer forfeiture cases promptly and within short time limits to the appropriate United States attorney we relied upon *United States v. Thirty-Seven Photographs*, 402 U.S. 363, 91 S.Ct. 1400, 28 L.Ed.2d 822 (1971). We recognized that case might be read narrowly as concerned with prior restraints on First Amendment rights, but noted that withholding of an owner's property "presents a constitutional claim of no less dignity than that arising from the dirty pictures." 472 F.2d at 472. The Supreme Court has since evidenced equal concern for procedural due process in deprivation of property cases. *See North Georgia Finishing, Inc. v. Di-Chem, Inc.*, 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975); *Mitchell v. W. T. Grant Co.*, 416

U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974); and *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). *Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974), holds that a preseizure hearing is not required in a situation similar to the one before this Court, but the decision contemplates a quick postseizure proceeding.

Other circuits which have considered the issue have concurred in the essential reasoning in *Sarkisian*, that prompt referral to the U.S. attorney is required in all seizure cases. *Ivers v. United States*, 581 F.2d 1362, 1372 (9th Cir. 1978); *States Marine Lines, Inc. v. Shultz*, 498 F.2d 1146, 1155 (4th Cir. 1974).

Our conclusion that there must be a prompt referral to the U.S. attorney does not end the case. It has always been recognized that "[n]o seizure or forfeiture will be invalidated for delay, however, where the claimant is responsible for extending either administrative action or judicial determination beyond the allowable time . . . " *United States v. Thirty-Seven Photographs*, 402 U.S. 363, 374, 91 S.Ct. 1400, 1407, 28 L.Ed.2d 822 (1971).

In *States Marine Lines, Inc. v. Shultz, supra*, at 1155, after stating the immediate referral requirement the court said:

> Of course, whether or not the requirement of 'immediate' action is satisfied in any given case will depend upon factors such as the length of time necessary for an investigation by customs officers and whether delay in the proceedings is caused by the claimant.

Also in *Ivers v. United States, supra*, at 1372–73, the court ruled that delay in referring a case to the U.S. attorney must be viewed in context to see whether the claimant may have concurred in the delay. The court there found it important that the claimant was notified of a right to petition for relief, his attorney requested and was granted an extension of time in which to file a petition, the attorney specifically requested no judicial proceedings be commenced during the period of the extension and never demanded institution of judicial proceedings. The court was also influenced by the apparent absence of prejudice to the claimant's defenses attributable to the delay, the fact the item seized (money) was not a wasting asset, and claimant could have brought suit himself for return of the assets had he chosen to do so. Finally, the court said it was reluctant to impose a requirement of litigation upon the government, "with the increase of litigation and burdens on litigants that would entail, where, as here, the circumstances are equivocal." 581 F.2d at 1373.

In *Sarkisian* the only action of the claimant which could be said to represent consent to delay was his letter of inquiry treated by the Service as a petition for relief, but with respect to which the customs investigation was completed more than seven months before suit was brought for the asset's return.

There is no necessary inconsistency between the provisions of 19 U.S.C. § 1618 permitting a petition for administrative relief and contemporaneous court proceedings testing the legality of the forfeiture. The administrative action is a petition for "remission or mitigation," where relief may be given on equitable grounds that there was no willful negligence, intent "to defraud . . . or to violate the law." *Ibid.* We think that proceeding may also consider the legality of the forfeiture, since § 1618 permits relief upon "terms and conditions as he [Secretary of Treasury] deems reasonable and just," and allows an order discontinuing prosecutions. *Ibid.*

We acknowledge there are tens of thousands of customs seizures each year, and a solution is needed which will not clog the courts. But we must also recognize the undoubted constitutional right of an owner of property to a speedy hearing when his property has been seized by the government, and reconcile that with law which also contemplates possible administrative proceedings which can take months, even years, to produce final decisions.

■ We hold that where parties file for administrative relief, without asking for institution of court proceedings on the legal issues, they may not complain of abridgment of their rights to procedural due process during a reasonable period for investigation or until their sooner demand for forfeiture proceedings or suit brought to recover the property. In other words, they may forgo their right to a quick hearing, if such may reasonably be inferred from their actions. A mere request for administrative relief, however, does not bind the property owner to the Hobbesian choice of countenancing all the delays a vast federal bureaucracy can produce. Of course, not all inquiries or demands upon the Customs Service with respect to seized goods can be construed to be relief petitions which waive due process rights.

■ In the instant case there were multiple claimants to the seized jewels, each asserting somewhat different grounds for relief; their claims were intertwined but not incompatible one with the other. Clark and White dealt with Ford, who had a power of attorney from Prince Kahn. Clark has acquired White's interest and states now that he and Ford are entitled to the items. All filed administrative petitions; counsel for White, Ford and Kahn sought extensions of time to do so. The last was filed only 34 days before the suit was brought for return of the jewelry, and it was extensively amended only 15 days before the action. While there was no request that forfeiture proceedings not be instituted, as in *Ivers,* neither was there a demand for such action. Counsel for claimants included a former Deputy Director of Customs. No prejudice from the delay is shown; the assets are not wasting. We think the claimants may not prevail on the claim of violation of due process rights at this stage.

They have now, by their suit to recover the seized property, refused consent to further delay in adjudicating the legal aspects. We therefore remand the case for a consideration on the merits of their legal claim to the property. It is so ordered.