COMMONWEALTH vs. ONE 1976 CADILLAC DEVILLE
AUTOMOBILE.

Middlesex. January 10, 1980. — April 16, 1980.

Present: HENNESSEY, C.J., BRAUCHER, KAPLAN, LIACOS, & ABRAMS, JJ.

*Practice, Civil,* Forfeiture proceeding. *Due Process of Law,* Forfeiture
proceeding. *Motor Vehicle,* Forfeiture.

In an action by the Commonwealth pursuant to G. L. c. 94C, § 47, seek-
ing forfeiture of an automobile, there was sufficient evidence to war-
rant a finding that the automobile was used to transport and facilitate
the distribution of controlled substances within the meaning of c. 94C,
§ 47 (a) (3). [415-417]
Discussion of the period of time within which the Commonwealth may
bring a forfeiture proceeding pursuant to G. L. c. 94C, § 47 (d),
following seizure of property. [417-421]
In the circumstances, a twenty-day lapse between seizure of an automo-
bile and the commencement of forfeiture proceedings pursuant to
G. L. c. 94C, § 47 (d), was not unreasonable and did not violate the
claimant's right to due process of law. [421-422]

CIVIL ACTION commenced in the Superior Court Depart-
ment on June 20, 1979.

The case was heard by *Flaksman,* J., a District Court
judge sitting under statutory authority.

The Supreme Judicial Court granted a request for direct
appellate review.

*John C. McBride* for the defendant.

*Peter W. Agnes, Jr.,* Assistant District Attorney, for the
Commonwealth.

KAPLAN, J. We granted direct appellate review of a judg-
ment of the Superior Court, Middlesex County, that forfeited
the defendant Cadillac automobile to the Commonwealth
under G. L. c. 94C, § 47, as a "conveyance" involved in
drug trafficking as therein defined. On this appeal the

claimant-owner argues that the car was not a conveyance within the statute and that the whole forfeiture proceeding was invalidated because it was started too late. We affirm.

The facts as found by the judge and somewhat amplified from the record were as follows. On the night of May 24, 1979, undercover Officer David Nieves of the Metropolitan District Commission police made contact with Phyllis Cohen. Cohen said she could arrange for him to buy one ounce of cocaine. On May 29, Nieves accompanied by William L. Thompson, another MDC undercover officer, went to Cohen's apartment. At Thompson's request that she arrange for the cocaine sale, Cohen telephoned "Dave" in Medford. She reported that Dave would sell them an ounce the following evening at the "wholesale" price of $1,800 to $1,900.

Thompson spoke to Dave — later identified as David Albro — over the telephone next evening. Dave told him the cocaine was coming from Providence, Rhode Island, in a "big boat" driven by a man named "David." Accordingly the sale was to take place at 10 P.M. that night; the place set was the parking lot of a restaurant at Wellington Circle, Medford.

At the agreed time and place Albro appeared and approached the two officers on foot. He said the driver was "paranoid" and was waiting down the street in a construction site until Albro could canvass the area and report. Apparently satisfied, Albro left in a pickup truck (not previously noticed) to tell the waiting driver that the coast was clear.

About 10:20 P.M. a Cadillac DeVille sedan with Rhode Island license plates drew into the parking lot. David Izzo was driving. Seated next to him was Virginia Voccola and next to her John Rutkowski. Albro was in the back seat. Thompson approached the car and Albro introduced the other three to him. Izzo wanted Thompson to get into the car and take a ride with them in order to try the cocaine. Thompson agreed but said they would have to return to the restaurant parking lot to get the money because he had stored it in the trunk of his car.

With Thompson in the back seat of the Cadillac, Izzo drove to the parking lot of a nearby doughnut shop and parked deliberately so that the lights fully illuminated the interior of the car. Izzo asked Voccola for the cocaine. According to Thompson, "Voccola either leaned down, reached down — I didn't see where she retrieved the cocaine from — and handed it to Mr. Izzo." Thompson believed the cocaine did not come from Voccola's handbag (she seemed to be reaching down too far for that), but he admitted he did not have a clear field of vision. Izzo passed to Thompson a double-wrapped clear plastic bag received from Voccola containing a white powdery substance and asked Thompson to try it. Thompson pretended to sample the powder by sniffing, said it was "fine with me," and told Izzo to return to the car at Wellington Circle to get the money. Izzo drove there. Thompson went to his car, opened the trunk, produced the money, and returned to Izzo's car. At this signal, backup officers moved in and arrested the four in the Cadillac, and seized the car.

Searches of the car produced the bag destined for Thompson with twenty-nine grams of cocaine (about an ounce), and an eyeglass case tucked into the front seat beside the driver. In this case was a second bag holding about fourteen grams of cocaine, a quantity of marihuana, and a razor blade wrapped in paper (presumably, according to Thompson, to be used to "cut" cocaine into smaller units for sale). Three marihuana cigarettes were found in a cigarette pack on the dashboard, and recovered from the interior of the car was a .357 magnum handgun with two rounds.

Izzo was charged with possession of a Class B controlled substance (cocaine) with intent to distribute, and other drug offenses. Various charges were also lodged against Albro, Voccola, and Rutkowski. Cohen was later arrested and also charged. Izzo's probable cause hearing was scheduled for June 25, 1979.

As indicated, the car was seized by the officers at the time of the arrests on May 30. On June 20 the Commonwealth, pursuant to G. L. c. 94C, § 47 (d), filed its complaint,

accompanied by an affidavit sworn by Thompson, in a "proceeding in rem" "deemed a civil suit in equity"[1] praying forfeiture of the Cadillac, and requesting an order on the Commonwealth to serve notice by registered or certified mail on David Izzo, the apparent owner, at his Johnston, Rhode Island, address. Also sought was an ex parte order, under § 47 (f) (and G. L. c. 276)[2] for retention of the car in the Commonwealth's possession pending the proceeding.

On June 21, 1979, Izzo commenced in the same court a cross action against the Commonwealth in effect demanding dismissal of the forfeiture action on the ground that the car was not within § 47, or that that action had not been initiated within fourteen days of the seizure as allegedly required by G. L. c. 257, § 2, or was otherwise not timely brought, and so deprived him as claimant of due process. Temporary and final injunctive relief was requested against the Commonwealth's continued custody of the car, in support whereof Izzo's attorney filed his affidavit stating that he had searched the civil index on June 15 and June 18 and could find no record of the filing of a Commonwealth complaint for forfeiture.

On June 25 both actions came before a judge who ordered that custody remain with the Commonwealth pending an evidentiary hearing and denied Izzo his requested relief. Answer to the Commonwealth's complaint was filed on July 2. On July 5 a judge conducted a trial in the forfeiture proceeding, with Izzo appearing as claimant and resisting forfeiture on the same grounds alleged in his complaint. Facts were established as above set forth.[3] The judge on July 13,

---

[1] There was no demand for trial by jury. See *Commonwealth* v. *One 1969 Mercedes-Benz Auto.*, 375 Mass. 663, 669 n.8 (1978).

[2] An ex parte order may issue under § 47 (f) to hold the property. This is subject to a probable cause requirement and subject also to the "applicable provisions of G. L. c. 276 which govern the seizure, custody, and disposition of property taken under a search warrant.

[3] The parties stipulated to the facts as set forth in Thompson's affidavit accompanying the complaint. In addition Thompson testified. No other witnesses were called on either side.

1979, filed findings of fact and rulings of law, as required by § 47 (d), supporting the judgment of forfeiture appealed from.[4] (Izzo's action remained dormant after the order of June 25.)

1. Section 47 (a) (3) makes subject to forfeiture: "All conveyances, including . . . vehicles . . . which are used, or are intended for use, to transport, conceal, or otherwise to facilitate the manufacture, dispensing or distribution of or possession with intent to manufacture, dispense or distribute a controlled substance in violation of the provisions of section thirty-two [of c. 94C]."[5] According to § 47 (d), the Commonwealth must prove "all material facts by a preponderance of the evidence," but the "exceptions" of § 47 (c) (3) are to be shown by the claimant, also by a preponderance. The first sentence of subsection (c) (3) states: "No conveyance shall be subject to forfeiture unless the owner thereof knew or should have known that such conveyance was used in and for the business of unlawfully manufacturing, dispensing, or distributing controlled substances." And the second sentence: "Proof that the conveyance was used to facilitate the unlawful dispensing, manufacturing or distribution of, or possession with intent unlawfully to manufacture, dispense or distribute, controlled substances on three or more different dates shall be prima facie evidence that the conveyance was used in and for the business of unlawfully manufacturing, dispensing or distributing controlled substances."

Thus the Commonwealth is to prove that at least on one occasion the conveyance was used or intended for use in the manner described in (a) (3). The reference is then to (c) (3), but what are the "exceptions" of that provision, as to which the claimant has the burden, is not made altogether clear.

---

[4] A single justice of this court on July 20, 1979, on application by Izzo for relief pending appeal, released the car to him on his posting a suitable bond.

[5] General Laws c. 94C, § 32, makes provision regarding the unauthorized manufacture, distribution, and so forth of controlled substances. Basic definitions appear at § 1.

However, in light of the Commonwealth's proof in the present case negating each element of possible "exception" in (c) (3), the question of burden becomes unimportant.

Clearly, as we held in *Commonwealth* v. *One 1969 Mercedes-Benz Auto.*, 375 Mass. 663, 667 (1978), the "mere personal possession of a controlled substance by one traveling in a vehicle would not constitute sufficient grounds under the statute for the forfeiture of the vehicle." There the car owner and another left the owner's house and entered the car in the driveway. After a short conversation, the owner and the passenger drove down the street. Police stopped the car shortly thereafter and found in the passenger's pocket a small quantity of heroin. Nothing was found on the owner or in the car. (A similar tin of heroin was found later in the owner's house.) The Commonwealth had not made a preponderant showing that the car was used (or intended to be used) to facilitate distribution of drugs within the meaning of § 47 (a) (3). The judge's findings for the Commonwealth were held "clearly erroneous" (Mass. R. Civ. P. 52 [a], 365 Mass. 816 [1974]) and were set aside.

The present case is materially different. A trier could find on the evidence that the car was used to transport a controlled substance — from Rhode Island to the site of the transaction — with a view to its distribution ([a] [3]). In this connection we have a supportive finding by the judge that Voccola "took the bag [of cocaine] from someplace inside the car" as well as his ultimate finding that "the vehicle was used to transport and facilitate the distribution of controlled substances." We think there is no statutory requirement that the drug be physically stashed in the car rather than carried by an occupant, as long as the objective is distribution.

To the extent that (c) (3), in speaking of use of the vehicle in the "business" of distributing, introduces a commercial element beyond (a) (3), not only was it not disproved by the plaintiff, it was sufficiently proved by the Commonwealth to warrant a finding by the trier; and the same can be said of the proposition that the claimant "knew or should have

known" of the use ([c] [3]). The cocaine was earmarked and separately packaged for the particular sale. A sum (within limits) was set as the wholesale price of the goods. There was apparatus in the car for handling the drug. Cf. *Commonwealth* v. *Ellis*, 356 Mass. 574, 578-579 (1970). It seems to us that the demonstrated transaction of sale (or near sale) supports a finding of "business" even if we put to one side the indications from the Cohen brokerage and the whole quantity of cocaine in the car that the operation contemplated more than a single transaction. Authority from other States is suggestive here. *State ex rel. Fort Lauderdale* v. *Franzer*, 364 So. 2d 62, 63 (Fla. Dist. Ct. App. 1978); *State* v. *A 1971 Datsun*, 139 N.J. Super. 186, 189 (1976). The three-dates provision of the second sentence of (c)(3) is not to the contrary, and is read as meaning that such repetitious "facilitation" by use of the vehicle establishes (subject to rebuttal) a prima facie case of business use even without evidence of a commercial setting. See *Commonwealth* v. *Pauley*, 368 Mass. 286, 290 (1975).

2. The car was seized on May 30, 1979, but it was not until June 20, 1979, that the Commonwealth filed its suit for forfeiture. The claimant does not complain, nor could he, that the seizure without prior notice or opportunity for hearing was constitutionally impermissible (see *Commonwealth* v. *One 1977 Pontiac Grand Prix Auto.*, 375 Mass. 669, 672 [1978]; *Calero-Toledo* v. *Pearson Yacht Leasing Co.*, 416 U.S. 663, 679 [1979]); rather he argues that the twenty-day interval in instituting the forfeiture proceeding violates his due process right to a hearing "at a meaningful time and in a meaningful manner." *Armstrong* v. *Manzo*, 380 U.S. 545, 552 (1965). See *Fuentes* v. *Shevin*, 407 U.S. 67, 81 (1972); *Everett* v. *Slade*, 83 Wash. 2d 80 (1973). He suggests that the constitutional question would be avoided (and the present forfeiture would fail) if we should find that G. L. c. 257 dealing with other kinds of forfeitures supplies a time limit of fourteen days applicable to c. 94C, § 47, or if we should announce such a time limit without regard to c. 257. We decline to do either, but we hold that the pro-

ceeding must be begun within a reasonable time, and that the twenty days here did not exceed such a period.

Section 47 does not itself fix a time for commencement of the proceeding after seizure.[6] To effectuate what he takes to be legislative policy and also to avoid constitutional problems, the claimant would have us look to the more generally applicable c. 257, which by its § 1 applies to "[p]roperty which has been forfeited for an offence" and which is subject to seizure by a private person or a police officer or constable of the town where the property is found. Chapter 257 lays down a procedure for the suit to carry out the forfeiture, including a provision in § 2 that a person making a seizure shall file a libel "within fourteen days thereafter." The chapter is of long standing and the Legislature could have referred to it in enacting c. 94C in 1971, but did not. By contrast, an explicit reference was made to c. 257 when the Legislature established a procedure for forfeiture for violations of laws or regulations regarding marine fish and fisheries. See G. L. c. 130, § 12. The fact that c. 94C has a number of procedural provisions at variance with those of c. 257 makes it all the harder to justify the analogical attraction to it of § 2 of c. 257.[7] In the past we rejected an attempt to engraft c. 257 on a specialized forfeiture proceeding. See *Attorney Gen.* v. *Municipal Court of the City of Boston*, 103 Mass. 456, 467-468 (1869) (gambling devices seized by search warrant); see also *Commonwealth* v. *United Food Corp.*, 374 Mass. 765, 781 n.11 (1978).

We decline also the alternative invitation to announce by decision a period in gross for initiation of a forfeiture pro-

---

[6] There is, however, a statute, G. L. c. 260, § 5, which provides nominally that if a forfeiture under a penal statute is given in whole or in part to the Commonwealth, the Commonwealth's action to recover it must be commenced "within two years next after the offence is committed."

[7] In fact not all of § 2 could be engrafted on c. 94C. Excluded by the conflicting terms of c. 94C, § 47 (d), apparently would be the provision of § 2 allowing the filing of the "libel" in a District Court (§ 47 [d] mentions only the Superior Court) and the provision that the libel is to be filed by the person who makes the seizure (§ 47 [d] speaks of the Commonwealth as plaintiff).

ceeding. It is true that in *United States* v. *Thirty-Seven Photographs,* 402 U.S. 363 (1971), the Supreme Court declared that forfeiture proceedings under 19 U.S.C. § 1305(a) (1970) (which has no express time limit) must be started within fourteen days after customs agents seize allegedly obscene materials, and, further, that a judicial determination on obscenity must be reached within sixty days thereafter.[8] The Court, apprehending constitutional difficulties, and drawing heavily on legislative history that showed an intent to have the particular matters speeded, decided upon these fixed periods by adopting the average intervals actually elapsed in past reported cases. Undoubtedly the First Amendment background serves largely to explain the Court's quite unusual action.[9] Indeed the Court said, "Of course, we do not now decide that these are the only constitutionally permissible time limits. We note, furthermore, that constitutionally permissible limits may vary in different contexts." *Id.* at 374. With respect to the broad range of forfeitures, including forfeiture of vehicles, permitted under 19 U.S.C. §§ 1602-1604, where no First Amendment question obtrudes, the courts, in the absence of time limits expressed in the statute for the commencement of proceedings, have applied simply a standard of reasonableness to satisfy any constitutional requirement. See, e.g., *United States* v. *One 1972 Mercedes-Benz 250,* 545 F.2d 1233, 1236 (9th Cir. 1976); *States Marine Lines, Inc.* v. *Shultz,* 498 F.2d 1146, 1155 (4th Cir. 1974).

In the background of our c. 94C we find no such special legislative concern with expedition as the Court was able to discover in *Thirty-Seven Photographs.*[10] Indeed c. 94C,

[8] The present claimant does not press for any definition of a maximum or permissible interval between commencement and determination of suit.

[9] The background is referred to in *Ivers* v. *United States,* 581 F.2d 1362, 1368 (9th Cir. 1978); *United States* v. *One 1970 Ford Pickup,* 564 F.2d 864, 866 n.1 (9th Cir. 1977).

[10] Section 47 (*d*) does speak of a prompt hearing not less than two weeks after notice to the owner following commencement of the action; and the effect of our decision herein is to require reasonably prompt institution of an action after seizure.

without express limits of time, is to be contrasted with other forfeiture statutes on our books that do establish exigent limits. G. L. c. 64C, § 8 (forty-eight hours); G. L. c. 138, §§ 47, 48 (twenty-four hours). Of course the First Amendment is not in point.

Although we decline to announce a fixed period for commencement of suit, we recognize the practical desirability and constitutional significance of reasonable promptness in initiation of proceedings under c. 94C. This is peculiarly important where the owner is not on contemporaneous notice of seizure — as by his related arrest on criminal charges — and may get his first notice of seizure through the service of process upon him in the forfeiture suit. Cf. *Commonwealth* v. *One 1977 Pontiac Grand Prix Auto.*, 375 Mass. 669, 670-671, 672 n.4 (1978).

"[G]overnmental officials in this area are not endowed with an unfettered discretion in choosing when to institute the requisite judicial proceedings. Due process requires that these proceedings be commenced with some promptitude." *Ivers* v. *United States*, 581 F.2d 1362, 1368 (9th Cir. 1978).[11] There has not been, nor can there be, a precise exposition of what is reasonably prompt. There should be due allowance for enforcement activities and coordination with the prosecutor and preparation of the case for filing, and strict mechanical efficiency can hardly be made the criterion. On the other hand we can point to some factors that may not justify delay although on occasion they have been thought to do so. It is suggested in some decisions that initiation of the forfeiture suit can be postponed until major criminal proceedings are completed,[12] but there is no neces-

---

[11] See *White* v. *Acree*, 594 F.2d 1385, 1389 (10th Cir. 1979); *United States* v. *One Motor Yacht Named Mercury*, 527 F.2d 1112, 1114 (1st Cir. 1975); *United States* v. *Eight Rhodesian Stone Statues*, 449 F. Supp. 193, 200 (C.D. Cal. 1978); *State* v. *One Ford Van Econoline*, 154 N.J. Super. 326, 336 (1977).

[12] See *United States* v. *$40,454 in United States Currency*, 469 F. Supp. 1041, 1044 (W.D. Pa. 1979); *United States* v. *One 1973 Dodge Van*, 416 F. Supp. 43, 47 (E.D. Mich. 1976).

sary precedency here, and a vehicle may be forfeited even though the criminal prosecution results in acquittal, or is dismissed by the government, or, indeed, is never brought.[13] Dubious, also, is the idea that delay in starting the forfeiture suit may be justified for the reason that the seized goods are needed as evidence in the criminal prosecution.[14]

We stress that some current, definite reaction by the claimant to governmental delay may be demanded if he is later to complain of it. "[C]laimants who stand by mutely while time passes, facilitating or condoning delay by their requests or other actions, will not later be heard to complain of prejudicial delay." *Ivers* v. *United States, supra* at 1373. See *United States* v. *One 1973 Ford LTD,* 409 F. Supp. 741, 742-743 (D. Nev. 1976); *United States* v. *Thirty-Seven Photographs, supra* at 374; *States Marine Lines, Inc.* v. *Shultz, supra* at 1155. While a suit by the claimant demanding return of the goods is not a condition of his asserting successfully a claim of prejudicial delay, evidence of inquiries by him or the like will make delay on the government's side harder for it to justify. See *White* v. *Acree,* 594 F.2d 1385, 1390 (10th Cir. 1979); *United States* v. *Eight Rhodesian Stone Statues,* 449 F. Supp. 193, 206 (C.D. Cal. 1978).

With a "reasonably prompt" measure, delays considerably greater than twenty days have been found acceptable, as shown in the margin.[15] Delays held prejudicial have

---

[13] See *United States* v. *One Motor Yacht Named Mercury,* 527 F.2d 1112, 1114 (1st Cir. 1975); *United States* v. *One Douglas A-26B Aircraft,* 436 F. Supp. 1292, 1296 (S.D. Ga. 1977); *State* v. *One Ford Van Econoline,* 154 N.J. Super. 326, 338 (1977).

[14] See *United States* v. *Premises Known as 608 Taylor Ave.,* 584 F.2d 1297, 1301-1302 (3d Cir. 1978); *United States* v. *$40,454 in United States Currency, supra* at 1044.

[15] *United States* v. *One 1973 Dodge Van,* 416 F. Supp. 43 (E.D. Mich. 1976) (six months). *United States* v. *One 1973 Buick Riviera,* 560 F.2d 897 (8th Cir. 1977) (five months). *United States* v. *One 1971 Volvo 2-Door Sedan,* 393 F. Supp. 843, 846-847 (C.D. Cal. 1975) (two months). *United States* v. *One 1972 Mercedes-Benz 250,* 545 F.2d 1233 (9th Cir. 1976) (five weeks). Cf. *One 1965 Buick 4 Door Sedan* v. *Commonwealth,* 46 Pa. Commw. Ct. 189, 191 (1979) (no denial of due process where three years elapsed between filing of forfeiture complaint and hearing thereon).

often run longer still.[16]  Considering the teaching of the cases taken as a whole, we do not think the twenty-day lapse in the present case approached the unreasonable.  This was Thompson's first encounter with a forfeiture proceeding. He testified at the hearing that he spoke with an assistant district attorney a day or two after the arrest about commencing the forfeiture suit, but was referred to another assistant district attorney with whom he was able to meet on June 13 to consider and decide what was required for a complaint.  A week later the affidavit had been typed and the officer signed it with a notary on hand.  The complaint was filed the same day.  This was not too bad a showing for two busy persons working in different locations.  There was small "wasting" of the asset in the interim.

*Judgment affirmed.*

---

Other Federal cases have allowed even longer delays, see, e.g., *United States* v. *One 1973 Ford LTD,* 409 F. Supp. 741 (D. Nev. 1976) (fourteen months); *United States* v. *One 1972 Wood, 19 Foot Custom Boat,* 501 F.2d 1327, 1329 (5th Cir. 1974) (per curiam) (ten months); *United States* v. *One 1964 MG,* 408 F. Supp. 1025 (W.D. Wash. 1976) (eight months), rev'd on other grounds, 584 F.2d 889 (9th Cir. 1978). However, in these latter cases the claimant had filed under 19 U.S.C. § 1618 a petition with the Secretary of the Treasury asking for remission or mitigation of the possible forfeiture of the conveyances involved. These petitions were followed by administrative investigations which, in the view of the courts, helped justify delay in the filing of suits.  There may now be some shift away from the position that the pendency of such a petition justifies failure to file the forfeiture suit promptly.  See, e.g., *White* v. *Acree, supra* at 1390.

[16] See, e.g., *United States* v. *One 1971 Opel G.T.,* 360 F. Supp. 638 (C.D. Cal. 1973) (thirteen and one-half-month delay); *United States* v. *A Quantity of Gold Jewelry,* 379 F. Supp. 283, 286 (C.D. Cal. 1974) (twenty-two-month delay); *United States* v. *One Motor Yacht Named Mercury,* 527 F.2d 1112, 1114 (1st Cir. 1975) (twelve and one-half-month delay); *United States* v. *One Douglas A-26B Aircraft,* 436 F. Supp. 1292, 1296 (S.D. Ga. 1977) (eight and one-half-month delay).