**UNITED STATES of America**

v.

**$10,755.00 IN UNITED STATES CURRENCY.**

Civ. No. K–80–1606.

United States District Court,
D. Maryland.

Sept. 30, 1981.

448

J. Frederick Motz, U. S. Atty., for the District of Maryland and Daniel F. Goldstein, Asst. U. S. Atty., for plaintiff.

Richard V. Falcon, Baltimore, Md., for claimant, Carroll T. Glorioso.

FRANK A. KAUFMAN, Chief Judge.

In this case the Government seeks forfeiture of $10,755 in United States currency seized on June 4, 1976 from the residence and person of claimant Carroll T. Glorioso, pursuant to search warrants issued on that day and on the previous day. On February 16, 1977, a grand jury for this District returned an indictment charging Glorioso and five others with having conducted an illegal

gambling business in violation of 18 U.S.C. § 1955. Glorioso and his co-defendants were tried and convicted in this Court on June 2, 1977 (U. S. v. Glorioso, et al., Criminal No. K–77–077). On appeal, Glorioso's conviction was affirmed by the Fourth Circuit, 580 F.2d 1050 (4th Cir. August 2, 1978). Subsequently, the Supreme Court denied Glorioso's petition for certiorari review. 439 U.S. 895, 99 S.Ct. 255, 58 L.Ed.2d 241 (1978). The within forfeiture action was instituted by the Government on June 23, 1980 and is resisted by Glorioso who alleges that the money was not used in the "operation, financing, management, supervision, direction, or ownership of an illegal gambling business" as required by 18 U.S.C. § 1955(a). Rather, Glorioso asserts that the money constituted the remainder of about $25,000 cash proceeds of a 1971 sale he had made of the Carousel Lounge, an establishment which he owned or in which he had an ownership interest. Glorioso also contends that he kept those proceeds completely segregated from any money used by him in connection with his gambling activities.[1]

During a non-jury trial Glorioso appeared as the only witness. After hearing his testimony and after considering all of the evidence, this Court found that Glorioso had "failed by a wide margin" to bear his burden of proving by a preponderance of the evidence[2] that the alleged Carousel Lounge sale proceeds had been kept segregated from money used in connection with Glorioso's gambling activities. Indeed, this Court found Glorioso's testimony "incredible" and

---

1. See Glorioso's affidavit dated April 22, 1981.

2. That burden of proof is placed on the claimant through a combination of 18 U.S.C. § 1955(d) and 19 U.S.C. § 1615. The former provides in relevant part:

> Any property, including money, used in violation of the provisions of this section may be seized and forfeited to the United States. All provisions of law relating to the seizure, summary, and judicial procedures, and condemnation of vessels, vehicles, merchandise, and baggage for violation of the customs laws ... shall apply to seizures and forfeitures incurred or alleged to have been incurred under the provisions of this section ...

19 U.S.C. § 1615 sets forth the allocation of burden of proof in forfeiture proceedings for violation of the customs laws and places upon a claimant the burden of proving by a preponderance of the evidence that the articles seized are not subject to forfeiture if the Government first shows probable cause for the institution of forfeiture proceedings. At trial, the parties agreed that the record in the criminal case underlying the within suit (U. S. v. Glorioso, Criminal No. K–77–077) establishes probable cause that the currency at issue herein was used in illegal gambling activities or was the fruit thereof.

commented that not only had Glorioso not borne his burden of proof by a preponderance of the evidence, but that the Government had shown beyond a reasonable doubt that Glorioso did not know where the money in question came from or how that money had been handled.

There remains only the question of whether delay by the Government in the institution of this forfeiture case provides any basis for non-forfeiture and return to Glorioso of the money seized. The within proceedings, as noted *supra*, were instituted on June 23, 1980, a date approximately 48 months after the seizure itself and approximately 20 months after the Supreme Court denied Glorioso's petition for certiorari. At trial, counsel for the Government and for Glorioso orally stipulated that the only reason for such delay was that the Assistant United States Attorneys who handled the criminal case in which Glorioso was convicted were under heavy time pressure because of their crowded calendars and prosecutorial duties.

Title 19, United States Code, §§ 1602–04 contain the statutory provisions which govern action to be taken when articles are seized for violations of the customs laws. Those provisions are made applicable to the within case by 18 U.S.C. § 1955(d).[3] They require forfeiture proceedings to be instituted and processed promptly. Section 1604 provides in relevant part:

> It shall be the duty of every United States attorney immediately to inquire into the facts ... [surrounding any alleged violation of law], and if it appears probable that any ... forfeiture has been incurred by reason of such violation, for the recovery of which the institution of proceedings in the United States District Court is necessary, *forthwith* to cause the proper proceedings to be commenced and prosecuted, in which case he shall report the facts to the Secretary of the Treasury for his direction in the premises.

(Emphasis added). In *United States v. Premises Known as 608 Taylor Avenue*, 584 F.2d 1297 (3d Cir. 1978), Judge Hunter wrote (at 1304):

> ... Section 1955(d), relating to gambling-related forfeitures, incorporates the procedures pertaining to the forfeiture of property for violations of the customs laws. 19 U.S.C. §§ 1602 *et seq.* Those sections require that a forfeiture proceeding be promptly instituted. *Id.* §§ 1602–04; *United States v. One 1970 Ford Pickup*, 564 F.2d 864 (9th Cir. 1977). Aside from the statutory provisions, due process also requires forfeiture proceedings against seized property be brought without unreasonable delay [citations omitted] ....

However, as the Court stated in *United States v. One 1973 Ford LTD*, 409 F.Supp. 741, 743 (D.Nev.1976),

> Speed for the sake of speed alone is not an essential of due process, nor is delay which does not in any way deprive a claimant of the right to the use and enjoyment of his property a violation of due process ....

> Where delay has not in any respect prejudiced the arguable rights of the claimant, it cannot be relied upon as a defense ....

See also *Alsbury v. United States Postal Service*, 392 F.Supp. 71, 75–6 (C.D.Cal.1975), *affirmed* 530 F.2d 852 (9th Cir. 1976).

There are cases, in which the Government had seized tangible chattels whose value may well have depreciated with each passing day, and in which forfeiture sought by the Government after considerable delay was denied. *See United States v. One 1970 Ford Pickup*, 564 F.2d 864, 866 (9th Cir. 1977) ("Because of the fast depreciating nature of an automobile, the Government's claim that no prejudice resulted from the untimeliness of the Government's action is clearly without merit.")[4] The within case,

---

**3.** See note 2, *supra*.

**4.** See also *United States v. One Motor Yacht Named Mercury*, 527 F.2d 1112, (1st Cir. 1975);

*States Marine Lines v. Schultz*, 498 F.2d 1146 (4th Cir. 1974); *Sarkisian v. United States*, 472 F.2d 468 (10th Cir. 1973); *United States v. One Douglas A–26B Aircraft*, 436 F.Supp. 1292

however, involves the forfeiture of *money*. Money, unlike an automobile, is not generally thought of as a "wasting" asset, despite the adverse effects of inflation.[5]

This Court in no way condones the fact that the Government took so long to commence forfeiture proceedings. However, in view of the fact that Glorioso suffered no prejudice by the Government's delay, the delay herein is akin to "harmless error," and therefore does not in this case bar the forfeiture the Government seeks. Accordingly, judgment will be entered for the Government.

(S.D.Ga.1977); *Boston v. Stephens*, 395 F.Supp. 1000 (S.D.Ohio 1975); *United States v. A Quantity of Gold Jewelry*, 379 F.Supp. 283 (C.D.Cal.1974); *United States v. One 1971 Opel G.T.*, 360 F.Supp. 638, 642 (C.D.Cal.1973). In each of these cases the Government's quests for forfeiture were denied. In all but the last cited case, there is no specific mention of prejudice arising out of delay. However, in all these cases the claimant himself had instituted either a judicial or an administrative proceeding to recover property. While the duty to institute forfeiture proceedings lies with the Govern-

ment, Glorioso's "choice not to commence proceedings for restitution of his property provides a further indicium of his 'wait-and-see' attitude," *Ivers v. United States*, 581 F.2d 1362, 1373 (9th Cir. 1978), and an inference of his own lack of vital, urgent concern with regard to it.

5. *See Ivers v. United States*, 581 F.2d 1362, 1373 (9th Cir. 1978); *United States v. One 1973 Ford LTD*, 409 F.Supp. 741, 743 (D.Nev.1976); *United States v. One 1964 MG*, 408 F.Supp. 1025, 1029 (W.D.Wash.1976).