Robert G. BLACKFORD and Michael T. Cox

v.

MARYLAND AUTOMOBILE INSURANCE FUND, et al.

Civ. No. K–79–1222.

United States District Court, D. Maryland.

Dec. 30, 1981.

Robert G. Blackford and Michael T. Cox, pro se.

Stephen H. Sachs, Atty. Gen. of Md., Baltimore, Md., and John A. Andryszak, Asst. Atty. Gen., of Md., Annapolis, Md., for defendants.

FRANK A. KAUFMAN, Chief Judge.

Pursuant to 42 U.S.C. § 1983, plaintiffs,[1] unclassified employees of the Maryland Automobile Insurance Fund (hereinafter MAIF) until they were "laid off" on July 1, 1976, seek compensatory and punitive damages, challenging their dismissal from their jobs on due process and equal protection grounds. Federal question jurisdiction under 28 U.S.C. § 1331 is present.

In July 1976, MAIF, finding it necessary to lay off certain employees, selected the employees to be laid off on the basis of merit. In August 1976, plaintiffs instituted administrative proceedings before the Maryland State Department of Personnel, contending that they could be laid off only in accordance with Department of Personnel Rule 06.01.44 (hereinafter Rule 44), which provides for layoffs in order of seniority.[2] On July 15, 1977, Senior Arbitrator Barry Henderson held that plaintiffs were not "classified" employees, that Rule 44 was applicable only to classified employees, and that therefore that Rule was not applicable to plaintiffs. Plaintiffs, during the administrative proceedings, disputed that holding and also contended that the failure to apply Rule 44 to them denied them equal protection of the laws in the light of earlier dismissal actions which had proceeded in accordance with that rule. On October 17, 1979, in his final opinion in this case, Senior Arbitrator Henderson reaffirmed his conclusion as to the inapplicabili-

1. Plaintiffs proceed *pro se* in this case. One of the two plaintiffs, Mr. Blackford, is an attorney.

2. That Rule, at all times involved herein, provided in relevant part:

Whenever a position is to be abolished, discontinued or vacated because of stoppage or lack of work, or because of material change in duties serving to abolish the existing position and to create a new position as provided in Section 16 of the Merit System Law, the appointing authority shall notify the Secretary in writing of the number of positions abolished, discontinued, or vacated, together with the reasons therefor and the list of names of employees to be laid-off, in accordance with the provisions listed below.

The Secretary upon receipt of such notice, shall review and certify that the order of lay-off has been based on the following provisions:

\* \* \* \* \* \*

C. After the lay-off of all temporary employees and employees serving an original probationary period in the class in which the lay-off is to occur in the State agency or institution, permanent employees who have completed an original probationary period shall be laid off in order of seniority, with the employee having the lowest number of seniority points being laid off first. The formula for establishing seniority points shall be as follows:

\* \* \* \* \* \*

ty of Rule 44 and also rejected plaintiffs' equal protection argument. Herein plaintiffs continue to press their equal protection claim, and also assert that the state administrative procedures took so long as to deny to them due process.

Defendants have moved for summary judgment. In that context, all of plaintiffs' factual allegations are taken as true, as are certain sworn factual statements submitted by defendants which plaintiffs have not controverted.[3]

### Equal Protection

Several groups of MAIF employees were laid off beginning in the fall of 1975. In a memorandum dated October 10, 1975, MAIF announced that some employees would be dismissed in accordance with Rule 44. Certain unclassified employees, as well as classified employees, were laid off pursuant to that rule. None of the unclassified employees who were so laid off at that time were in MAIF's claim division (plaintiffs' division).[4] On May 11, 1976, plaintiffs were informed that the decision of whom to lay off in plaintiffs' department would be based on merit rather than seniority. Defendants assert that while MAIF regretted the need to reduce its work force, it sought to turn that necessity into the useful purpose of improving the overall quality of its work by retaining its best employees.

Plaintiffs do not contend that they were treated differently because of their membership in any suspect category, or that they were discriminated against in their pursuit of any fundamental right. Accordingly, the defendants' actions in discharging plaintiffs need not meet the test of "strict scrutiny." *See generally* L. Tribe, *American Constitutional Law* 1000–03, 1012 (1978). Rather, MAIF need only show a rational basis for such different treatment. See generally Tribe, *supra*, at 994–1000.

In *Russo v. Shapiro*, 309 F.Supp. 385, 391–92 (D.Conn.1969), the Connecticut Welfare Department, prior to the fall of 1969, had not provided a back-to-school clothing allowance. From August 29, 1969, until September 3, 1969, the Department provided such clothing allowances to several persons on the basis of need, without placing a ceiling on the amount permitted for each individual. From and after September 3, 1969, the Department limited such allowances to $30.00 per child. Noting that change, Judge Blumenfeld wrote:

> * * * The Equal Protection Clause does not prevent a statute or regulation from having a beginning and thus discriminat[ing] between rights of an earlier and a later time. [citation omitted] Nor does it require that a level of benefits, once established, exist for all time. Surely it is within the power of the state to change the level of benefits according to the available resources. [citation omitted] Even if that change results in smaller benefits being awarded thereafter, plaintiffs have not been denied equal protection so long as they are being treated the same as those similarly situated *at the same time.*

(Emphasis in original). *Accord: United States v. Kline*, 354 F.Supp. 931, 934–35 (M.D.Pa.), *aff'd without published opinion*, 474 F.2d 1337 (3d Cir. 1972); *Martinez v. Bell*, 468 F.Supp. 719, 728 (S.D.N.Y.1979); *Ivy Steel and Wire Co. v. City of Jacksonville*, 401 F.Supp. 701, 703–04 (M.D.Fla. 1975).

Plaintiffs seemingly do not assert that they were classified employees nor do they argue that all classified and all unclassified employees should have been treated in the same way. Rather, plaintiffs complain of the fact that after all employees were informed that layoffs would be made

---

3. *See* footnotes 4 and 7, *infra.*

4. *See* affidavit dated March 20, 1981, of John J. Corbley, Secretary of Licensing and Regulation for the State of Maryland, and former Executive Director of MAIF during the years 1973–1979. *See also* affidavit dated March 20, 1981, of Arthur L. Forbus, Executive Director of MAIF, who has held that position since December 1979, stating that in February 1981, when MAIF reduced its workforce, it had laid off classified employees in accordance with Rule 44 and unclassified employees for "lack of work."

in order of seniority, and after some layoffs were in fact made on that basis, then plaintiffs were laid off in accordance with different criteria.[5] For the reasons articulated by Judge Blumenthal in *Russo v. Shapiro, supra,* those equal protection claims lack merit.

### Due Process

■ Plaintiffs do not take the position that the administrative proceedings before the Maryland State Department of Personnel were unfair, but only that they took so long to complete that procedural due process was denied to plaintiffs. Plaintiffs appropriately initiated the applicable grievance procedures by filing a grievance on May 17, 1976. A final decision was not handed down by Arbitrator Henderson until October 17, 1979.

During that three and one-half year period, Arbitrator Henderson held a number of hearings and issued three written decisions. While some of the delay in the proceedings was occasioned by lack of speed on the part of the Assistant Attorney General who handled the case for MAIF at the administrative stage, a good deal of the blame for the delay also rests with plaintiffs and their then-counsel. It is also to be noted that both MAIF and plaintiffs apparently agreed to a number of postponements of several of the hearings. However, on the other hand, it is also true that after Arbitrator Henderson held the final hearing during the Spring of 1979 and received memoranda from the parties on or before April 16, 1979, he did not file his final opinion until one hundred eighty-four days later, that is, on October 17, 1979.[6]

"[T]he rapidity of administrative review is a significant factor in assessing the sufficiency of the entire process." *Fusari v. Steinberg,* 419 U.S. 379, 389, 95 S.Ct. 533, 539, 42 L.Ed.2d 521 (1975). However, before anyone may meritoriously complain that any state action is invalid for lack of due process, that person must establish a violation of a legally protectible liberty or property interest which he is entitled to assert. *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). At the time plaintiffs initiated the procedures at the administrative level challenging the termination of their employment, Maryland law imposed no deadline for the holding of a hearing or the rendering of a decision in connection with such challenge, although Maryland's Department of Personnel had, prior to the commencement by plaintiffs of the administrative proceedings, established informal guidelines setting a forty-five day target date for the rendering of such decisions. Seemingly, those guidelines were neither strictly adhered to nor strictly enforced.[7]

Effective July 1, 1978, that is, subsequent to the initiation of the grievance procedures, Md.Ann.Code art. 64A, § 33, governing the separation of state employees, was amended to provide:

> The Secretary of Personnel shall render * * * [his written decision to terminate an employee] within 45 days after a hearing is held before him or his authorized representative or within 45 days after all legal memoranda or briefs have been filed [in the grievance hearing].

---

**5.** Such allegations might state a claim for breach of contract. However, plaintiffs have not made such a claim in this Court. If plaintiffs so did, the question would arise as to whether this Court would have or exercise pendent jurisdiction over such a claim since diversity jurisdiction is apparently not present. However, that question is not before this Court for decision in this case.

**6.** The above recitation of events is drawn from a chronology prepared by the Court (Document 50) from the record herein and submitted for comment to plaintiffs and counsel for defend-

ants. Plaintiff Cox and counsel for defendants have filed affidavits making minor corrections in the Court's chronology (Documents 52 and 51, respectively). Neither plaintiffs nor defendants have controverted those minor changes, each of which this Court has accepted as factually correct.

**7.** *See* affidavits of Charles R. Hennick, Director of the Employee Relations Division of the Maryland Department of Personnel dated January 22, 1979, and of Arbitrator Henderson dated January 29, 1979.

28

Assuming without deciding that the provisions of that statute were applicable to the 1979 proceedings before Arbitrator Henderson, those provisions have been held to be directory, not mandatory. *Pope v. Secretary*, 46 Md.App. 716, 420 A.2d 1017 (1980), holding alternatively ·that (a) the complaining employee had waived his right to complain of the delay and (b) in any event, the time requirements were merely directory and called for no sanction to be visited upon the State and/or in favor of the complaining employee. Judge Lowe also commented (at 721, 420 A.2d 1017) that even if the provision was mandatory, the plaintiff would not be entitled to reinstatement or to back pay.

Even if the 1978 statute is applicable herein and even if its provisions be deemed, *arguendo* only, to be mandatory and to establish a right in favor of plaintiffs which required Arbitrator Henderson to file his decision within a forty-five day period after April 16, 1979, the date plaintiffs' counsel filed his last memorandum with the arbitrator, such violation would not rise to the level of deprivation to plaintiffs of due process under the 14th Amendment unless plaintiffs establish that the delay prejudiced any rights of plaintiffs. Herein, if Arbitrator Henderson had filed his final decision forty-five days after April 16, 1979, rather than on October 17, 1979, plaintiffs would not have been in any better or worse position to assert, the day after the filing of such decision, the equal protection claims stated herein or any other claims they have or could have stated either in this federal court or in any other court of the State of Maryland. In *United States v. One 1973 Ford LTD*, 409 F.Supp. 741, 743 (D.Nev. 1976), the Court wrote,

> Speed for the sake of speed alone is not an essential of due process, nor is delay which does not in any way deprive a claimant of the right to use and enjoyment of his property a violation of due process. * * *
> Where delay has not in any respect prejudiced the arguable rights of the claimant, it cannot be relied upon * * *.

*See Cohen v. United States*, 369 F.2d 976, 988, 177 Ct.Cl. 599, *cert. den.*, 387 U.S. 917, 87 S.Ct. 2029, 18 L.Ed.2d 969 (1966); *United States v. $10,755 in United States Currency*, 523 F.Supp. 447 (D.Md.1981); *Alsbury v. United States Postal Service*, 392 F.Supp. 71, 75–6 (C.D.Cal.1975), *aff'd*, 530 F.2d 852 (9th Cir. 1976).

The record herein reveals no prejudice to plaintiffs arising out of the delay in the administrative proceedings. It is also to be noted that during the hearing held on the record in this case on January 14, 1981, plaintiff Blackford stated that the administrative hearings had been fairly conducted and that other than with respect to the delay, plaintiffs did not assert that anything unconstitutional or unlawful had occurred. Under all of the circumstances in this case, plaintiffs due process contention may not prevail.

Accordingly, this Court will today enter an Order granting defendants' motion for summary judgment.